[Civ. No. 49802. First Dist., Div. Three. Aug. 28, 1981.]

CITY OF SAN LEANDRO, Plaintiff and Respondent, v.
ROSE M. HIGHSMITH et al., Defendants and Appellants.

COUNSEL

Melvin C. Kerwin and Kerwin & Duff for Defendants and Appellants.

Steven R. Meyers, City Attorney, Michael R. Nave and Lynch & Nave for Plaintiff and Respondent.

OPINION

**BARRY-DEAL, J.**—The property owners appeal from an order denying their motion for litigation expenses pursuant to Code of Civil Procedure section 1250.410[1] following an interlocutory judgment of condemnation of their property on September 26, 1979.

Appellants contend that respondent was apprised of their demand of $550,000 as just compensation by their deposition and that the actual

---

[1]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure. Section 1250.410 provides: "(a) At least 30 days prior to the date of trial, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff his final demand for compensation in the proceeding. Service shall be in the manner prescribed by Chapter 5 (commencing with Section 1010) of Title 14 of Part 2. [¶] (b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses. In determining the amount of such litigation expenses, the court shall consider any written revised or superseded offers and demands filed and served prior to or during trial."

trial date, rather than the original trial date which had been continued because of court congestion, was the controlling date for the 30-day notice of demand. They further maintain that the condemner's offer of compensation was unreasonable, that their demand was reasonable, and therefore that .the trial court abused its discretion in denying their motion.

## Background

Declarations upon which the motion was submitted reveal these facts. Rose Highsmith owned a two-thirds interest in a 30,000 square foot parcel of property on East Fourteenth Street in San Leandro, Alameda County. Her sister-in-law, Palmira T. Armanino, owned the other one-third interest as trustee of the Dominic C. Armanino Trust. Dominic, the brother of Rose, was trustor and a beneficiary of the trust created in 1973; he had also been the developer and manager of the subject property since its acquisition in 1952. A 2-story, steel and brick building measuring 1 920 square feet had been constructed on the property and the building was leased to the Red Barn, a fast-food restaurant.

The City of San Leandro, desiring to acquire the parcel for public street purposes, contracted in early 1978 with the State of California Department of Transportation (CalTrans) for an appraisal of the property. Relying on the CalTrans appraised value of $160,000, which included $24,900 for the leasehold interest, the city offered appellants $160,000 for acquisition of the property. Appellants refused the offer and hired Richard Laurence, certified public accountant (CPA), to appraise the property and to assist in negotiations with the city. No progress was made, and in April 1978 appellants hired Attorney Melvin C. Kerwin to represent them in the eminent domain proceeding. Their contract with Kerwin provided for payment to him of 40 percent of any amount in excess of $200,000, recovered by judgment, as fees for his legal services.

In April 1978, the city filed its proceeding and thereafter deposited with the State Treasurer the sum of $160,000 as probable compensation. The city employed John D. Andrews, M.A.I., for a second appraisal, and in July 1978 he placed a value of $250,000 on the property. In November 1978, the city retained Attorney Michael R. Nave as associate counsel in charge of litigation. In discussions with the city attorney, Nave learned that the city "verbally increased its offer to defendants to the sum of $250,000" at an unspecified time after Andrews' appraisal.

Trial was set for June 11, 1979. The parties do not agree when this date was set, but it was confirmed in appellants' conference statement dated May 18, 1979.[2]

In early May, Nave was aware that the trial date was fast approaching and instituted discovery proceedings. On May 11, 1979 (31 days before the June 11 trial date and before taking depositions), he filed the city's section 1250.410 offer of $250,000 and served it on appellants.

Dominic Armanino was deposed by Nave on May 14, 1979 (28 days before June 11), at which time Dominic expressed his opinion that his property had a value of $550,000, based on $10 per square foot for the land and $250,000 for improvements. Nave concluded that Dominic's opinion was without factual support and failed to take depreciation into account. He therefore "did not believe that it was advisable to increase the City's final offer."

Attorney Kerwin states that settlement was attempted at the pretrial conference on May 17, 1979, when $550,000 was reiterated "as defendants' demand." He also states that on May 18, 1979, defendants "served and filed" their settlement conference statement and that it recited the offer of $250,000 and the demand of $550,000. The statement also recited the separate issue of compensation to the lessees.

On May 21, 1979, the city's appraiser, Andrews, was deposed, and he again stated a fair market value of $250,000. The condemnees' appraiser, Fox, was also deposed on that date, and he opined a value of between $275,000 and $324,000. Attorney Nave "did not recommend an increase in the City's offer, because he viewed Fox's appraisal as not significantly greater than Andrews', because he thought it was lacking in proper foundation, and because trial was only 21 days away."

On May 24, 1979, the settlement conference was held. Kerwin states that the offer and demand of $250,000 and $550,000 were reiterated, that no settlement was reached, and that trial was set for June 11.

---

[2]The pretrial conference was held on May 17, 1979. According to California Rules of Court, rule 209(b), Rules for Superior Courts, "[t]he clerk shall give not less than 60 days' notice by mail of the time and place of the pretrial conference to all parties appearing therein unless the parties agree to a shorter time or the court orders a shorter time for good cause shown upon noticed motion, ..." The trial date is usually set at the pretrial conference. (See Cal. Rules of Court, rule 219, Rules for Superior Courts.) Thus, each party should have been aware by late March that a trial date was approaching.

On May 29, 1979, the condemnees' CPA, Richard Laurence, was deposed. His methodology strengthened Attorney Nave's conviction that the condemnees' valuation testimony was unsupported.

The cause was set for trial June 11. Because no court was available that day, the trial was continued to August 13, 1979. No further discovery was undertaken during this two-month interval.

On July 27, 1979 (17 days before the continued trial date), the condemnees prepared a "Final Demand for Compensation," asking $450,000. The document was filed July 30, 1979 (14 days before trial). Nave felt that it was inadvisable to increase the city's offer in view of the fact "that this demand was $126,000 higher than the high range of Mr. Fox's deposition testimony, and there was no indication that defendants had fired Mr. Fox."

Apparently there were no further offers or demands before commencement of the jury trial on August 13, 1979, which resulted in an award of $410,000, plus interest, as compensation to appellants for the taking of their property. Attorney's fees (40 percent of the excess over $200,000) amounted to $84,000, plus interest of $5,880.

The interlocutory judgment of condemnation was entered on September 26, 1979, and on October 22, appellants moved for litigation expenses pursuant to section 1250.410. The motion, submitted on declarations, memoranda of points and authorities, and argument, was denied. Appellants filed timely notice of appeal.[3]

*Scope of Review*

When ruling on a motion for litigation expenses under section 1250.410, the trial court is not required to make express findings. (*People* ex rel. *Dept. of Transportation* v. *Sunshine Canyon, Inc.* (1979) 94 Cal.App.3d 599, 604-605 [156 Cal.Rptr. 552]; cf. *Los Angeles Unified Sch. Dist.* v. *C. F. Bolster Co.* (1978) 81 Cal.App.3d 906, 916-918 [146 Cal.Rptr. 789].) The trial court herein did not make findings. It may have denied appellants' motion because it found (1) appellants' final demand was not timely; (2) respondent's offer was reasonable; or (3) ap-

---

[3]*An order made after an appealable judgment is appealable.* (§ 904.1, subd. (b); see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 81, p. 4091.)

pellants' demand was unreasonable. The trial court resolved one or more of these issues adversely to appellants on the basis of declarations. ■ "[I]n the consideration of an appeal from an order made upon affidavits [or declarations] involving the decision of a question of fact, an appellate court is bound by the same rule that controls it where oral testimony is presented for review. If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered as established." (*Fuller v. Lindenbaum* (1938) 29 Cal.App.2d 227, 230 [84 P.2d 155].)

### Timely Filing and Service of Demand

■ Appellants contend that respondent was apprised of their demand for $550,000 as just compensation when Dominic Armanino, one of the owners, gave his opinion of the value in his deposition on May 14, 1979, when that figure was set forth in appellants' pretrial statement for the conference on May 17, and again when that figure was used as the demand in their settlement conference statement "served and filed" on May 18. They acknowledge that these three events occurred within thirty days of June 11, the date trial was originally set. They urge, however, that the 30-day period should be measured from August 13, the actual trial date, even though that date had been set because of court congestion on June 11. Appellants concede that they did not file a separate, formal demand 30 days before either trial date. They explain that their "Final Demand for Compensation" of $450,000 filed on July 30, 1979, does not go "to the question of whether appellants are entitled to the recovery of litigation expenses, but [to] the amount of litigation expenses to be awarded" under section 1250.410, subdivision (b). In essence, appellants allege that they "substantially complied" with the notice requirements of the statute.

■ Attorney's fees can be recovered only if such recovery is specifically authorized by statute or by agreement of the parties. (§ 1021.) ■ A prevailing plaintiff (property owner) in an inverse condemnation proceeding is entitled to attorney's fees, appraisers' fees and engineering fees actually incurred, in addition to costs, as a matter of right. (§ 1036.) The property owner in an eminent domain proceeding, however, can recover such litigation expenses only by meeting the requirements set forth in section 1250.410.[4]

---

[4]Litigation expenses are defined in section 1235.140 to include reasonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were "reasonably and necessarily incurred to protect the defendant's interests . . . ."

Section 1250.410, subdivision (a), provides: "At least 30 days prior to the date of trial, the plaintiff *shall* file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant *shall* file and serve on the plaintiff his final demand for compensation in the proceeding. Service shall be in the manner prescribed by Chapter 5 (commencing with Section 1010) of Title 14 of Part 2." (Italics added.)

Use of the word "shall" in the statute means that the 30-day period is mandatory. (Gov. Code, § 14; *People* ex rel. *Dept. of Transportation* v. *Callahan Brothers* (1977) 69 Cal.App.3d 541, 543-544 [138 Cal.Rptr. 239];[5] see *Lake County Sanitation Dist.* v. *Schultz* (1978) 85 Cal.App. 3d 658, 668-669 [149 Cal.Rptr. 717]; Condemnation Practice in Cal. (Cont.Ed.Bar Supp. 1981) Pretrial Offer and Demand, § 9.14A, p. 103.)

 Appellants, citing *People* ex rel. *Dept. of Transportation* v. *Patton Mission Properties* (1979) 89 Cal.App.3d 204 [152 Cal.Rptr. 485], maintain that the 30-day notice must be measured from the actual trial date rather than the original trial date. *Patton* does not support appellants' position. In that case, the court, at defendant property owner's request during the mandatory settlement conference in December 1976, continued the trial from January 31 to August 15, 1977. (*Id.*, at p. 213, fn. 6.) The condemner had served and filed an offer more than 30 days prior to the first trial date, and appellants made their first demand on July 15, 31 days before the actual trial date. The court held that "appellants' demands were unreasonable in the light of their failure to communicate them to respondent in the face of respondent's previous offers." (*Id.*, at p. 213.)

The original trial date is the proper one for measuring the 30-day notice. To hold otherwise would encourage procrastination in making an offer or demand and would delay meaningful negotiations. "[The] purpose [of the statute] is to encourage early settlement so trial can be avoided" (*People* ex rel. *Dept. of Transportation* v. *Callahan Brothers, supra*, 69 Cal.App.3d at p. 543), and the statute imposes upon "both parties to the litigation the duty to act reasonably in an effort to settle the disputes." (*People* ex rel. *Dept. of Transportation* v. *Patton Mission*

---

[5]The decision interpreted section 1249.3, the predecessor of section 1250.410. The statutes are similarly worded the latter enactment merely clarified the standard of reasonableness. (*County of Los Angeles* v. *Kranz* (1977) 65 Cal.App.3d 656, 659, fn. 1 [135 Cal.Rptr. 473].)

*Properties, supra,* 89 Cal.App.3d at p. 213, italics omitted.) To allow either party to gamble on a delay in the trial court would not serve the purposes of the statute.

█ █ █ ██ Appellants failed to make their demand within the 30-day time limit which determines entitlement to litigation expenses (see *Lake County Sanitation Dist.* v. *Schultz, supra,* 85 Cal. App.3d at p. 669), and thus the trial court properly denied their motion for such expenses.[6]

█ We further hold that a recital of the demand and offer in a settlement conference statement, or in any other document, is not an adequate substitute for the formal demand and offer contemplated by section 1250.410 unless the parties have stipulated to a less formal exchange. The Legislature did not direct the parties to "apprise" each other or "communicate" with each other about an offer or demand. It mandated that a "final offer of compensation" and a "final demand for compensation" shall be served on the opposing party and filed with the court in the manner prescribed for service of a notice of motion. █ Thus, even if the actual trial date were the measuring date, appellants failed to file a demand meeting the requirements of the statute.

### Reasonableness of Offer

We have concluded that appellants failed to file a timely demand which precluded an award of litigation expenses and that the court properly denied their motion for that reason. Since we are unable to determine the basis for the court's denial of the motion, however, we have reviewed the offer and demand on the merits.

In denying the motion the trial court implicitly found (1) that respondent's offer was reasonable, and/or (2) that appellants' demand was

---

[6]The parties may stipulate to waiving the 30-day offer and demand period as they did in *Coachella Valley County Water Dist.* v. *Dreyfuss* (1979) 91 Cal.App.3d 949, 952 [154 Cal.Rptr. 467]. Although appellant argues that the parties were each aware of the position of the other, we find no evidence in the record that the parties had stipulated to a waiver of the mandatory time periods. (See also *People* ex rel. *Dept. of Transportation* v. *Societa Di Unione E Beneficenza Italiana* (1978) 87 Cal.App.3d 14, 22 [150 Cal.Rptr. 706], in which the court held that where both parties failed to meet the mandatory time limits, the property owner was not foreclosed from seeking litigation expenses "in view of the condemning agency's responsibility to rigidly adhere to statutory procedures governing an eminent domain proceeding which it has instituted against a property owner.")

unreasonable, both "viewed in the light of the evidence admitted and the compensation awarded in the proceeding, . . ." (§ 1250.410, subd. (b).)[7]

■ "Reasonableness of the final offer and demand presents factual issues which depend not only upon the percentage of difference in the monetary amounts of the offer and demand but also on the good faith, care and accuracy in the determination of those amounts, all of which are matters to be evaluated by the fact finder." (*Coachella Valley County Water Dist.* v. *Dreyfuss, supra,* 91 Cal.App.3d at p. 958, citing *People* ex rel. *Dept. of Transportation* v. *Societa Di Unione E Beneficenza Italiana, supra,* (1978) 87 Cal.App.3d 14, 23 [150 Cal.Rptr. 706].)

### *Reasonableness of Respondent's Offer*

■ Since respondent's highest and final offer was $160,000 lower than the $410,000 compensation awarded and was only 61 percent of that figure, if mathematical considerations alone were to be considered it would be arguable that as a matter of law the offer was unreasonable. (See, e.g., *State of California* ex rel. *State Pub. Works Bd.* v. *Turner* (1979) 90 Cal.App.3d 33, 39 [153 Cal.Rptr. 156], Weiner, J., dis., stating, "In every case where the ratio of offer to verdict was less than 80 percent, the offer was held to be unreasonable.") As we have just stated, however, the trial court was required to consider other factors including good faith, and care and accuracy in arriving at the final offer. (*Schultz, supra,* 85 Cal.App.3d at p. 667; see also *Patton, supra,* 89 Cal.App.3d at pp. 209-212, and cases discussed therein.)

■ "Where the reasonableness of an offer by a condemning agency has been factually determined by the trial judge, the determination must be upheld if supported by substantial evidence. The measure of reasonableness is, in the first instance, a factual matter for the trial court [citation]. Conflicts in the evidence are for the trial court. As a factual determination supported by the evidence, the trial court's finding of reasonableness, along with the judgment, is entitled to a broad presumption of validity on appeal [citations]." (*Turner, supra,* 90 Cal. App.3d at pp. 36-37.)

---

[7]Once the trial court decides to award litigation expenses at all, "[i]n determining the amount of such litigation expenses, the court shall consider any written revised or superseded offers and demands filed and served prior to or during trial." (§ 1250.410, subd. (b).) Since no litigation expenses were awarded, we do not consider this aspect of the statute.

■ We look to Attorney Nave's declaration for substantial evidence in support of a finding of reasonableness. Nave is a specialist in condemnation law. Over the past 12 years he had represented about 25 public agencies, and in so doing he had acquired about 200 parcels of improved and unimproved real property in urban and rural areas of California. He had studied and become familiar with many aspects of real estate appraisal techniques and construction estimating. After he assumed control of the case for respondent, he reviewed the work of the city appraiser, John D. Andrews, M.A.I., upon whose suggestion the offer of $250,000 was made. Nave with Andrews inspected all the comparable sales in the San Leandro area on numerous occasions.

Nave stated that in preparing his appraisal Andrews employed each of the three commonly accepted valuation approaches—comparable sales ["market data"], income ["Capitalization" or "cap"], and reproduction less depreciation ["cost"] (see Condemnation Practice in Cal. (Cont.Ed.Bar 1973) § 4.25, p. 57 (hereinafter cited as CEB), from which the quoted terms in brackets are taken).

Nave stated that since Andrews found no sales of fast-food restaurants in the vicinity of the subject parcel (i.e., comparable to the Red Barn property in issue), he investigated sales and leases of fast-food restaurants as far away as Sacramento in order to discover building costs, lease rates and rates of return, to aid him in using the three valuation approaches. Additionally, Andrews investigated and discussed the performance history of the Red Barn with representatives of the parent company, and he inspected the Red Barn, measuring and photographing the interior and exterior of the building.

The above constitutes substantial evidence in support of a finding that respondent's offer of $250,000 made on May 11, 1979, was reasonable, as it appears to have been determined with good faith, care and accuracy. (See *Turner, supra*, 90 Cal.App.3d at p. 37.)

Respondent's alleged refusal to reevaluate its offer must also be taken into account in determining whether, ultimately, its final offer of the same amount was reasonable.

Nave declared in detail the reasons for respondent's position of standing firm on its offer. It appeared at Dominic's deposition on May 14, 1979, that the condemnees' opinion of a fair market value of $550,000 was "premised upon a square foot cost of $10.00 for 30,000 square feet,

and $250,000.00 for the cost of reproducing the restaurant building. Not only were both figures without factual support, but Mr. Armanino did not depreciate the 13 year old building." Nave attached to his declaration copies of pages of the deposition supporting this allegation. This evidence provided substantial support for a determination that the condemner acted in good faith when it refused to increase its offer after Dominic's demand. (*Turner, supra*, 90 Cal.App.3d at pp. 37-38.)

Nave's declaration also detailed his reasons for standing firm after deposing C. Warren Fox (appellants' real estate appraiser) and Richard Laurence (their CPA). As to Fox's testimony, Nave stated that Fox "testified that he never inspected the interior of the Red Barn restaurant; that an appraiser whose name he could not recall gave him 4 sales in the vicinity; that he did not confirm these sales; that he had no other sales other than the 4; that he had not employed an income approach; that his range of value for the subject was $275,000.00 to $324,000.00; that the contractor he consulted for reproduction costs did not know the size of the Red Barn building because Mr. Fox had not seen the plans for the building." This too was supported by copies of pages of Fox's deposition, attached to the Nave declaration as exhibit B. Nave declined to increase respondent's offer at this point because (1) trial was to occur in 21 days (the original trial date of June 11); (2) Fox had done nothing but rely on unconfirmed sales; and (3) Fox's range of value was not significantly greater than the valuation set by respondent's expert.

Nave stated that the Laurence deposition confirmed his belief that appellants' demand was without proper foundation. Laurence's deposition revealed "that he was computing on lost rental income rather than using an income stream to value the subject property. Knowing that lost rental income is not compensable in a condemnation action [Nave] prepared a Motion in Limine to prevent his testimony. This motion was granted when filed at the beginning of trial on August 13, 1979 . . . . The fatal defect in Mr. Laurence's deposition testimony did not give me any basis to recommend an increase in the City's offer." (See generally CEB § 4.44 et seq. on the income approach to valuation of fair market value.)

Respondent concedes that the condemner may be penalized for ignoring the opinion of the condemnees' experts (see *Schultz, supra*, 85 Cal. App.3d at pp. 667-668); but Nave's declaration supports the trial court's implicit finding that this did not occur.

In sum, although mathematically respondent's final offer appears to have been unreasonably low in light of the verdict, Nave's declaration supports a finding that the offer was made in good faith and was arrived at with care and accuracy. Accordingly, substantial evidence supported a finding of reasonableness, and this finding alone supports the trial court's denial of the motion.

### Unreasonableness of Appellants' Demand

Denial of the motion might also have been predicated upon a finding that appellants' demand was unreasonable. The evidence on this point was in conflict. ▮ Where the evidence is uncontradicted, the question of reasonableness of offer and demand is one of law. Where, however, the evidence is in conflict, the question is one of fact for the trial court. (*Schultz, supra*, 85 Cal.App.3d at pp. 666-667.) ▮ A review of Nave's declaration, *ante*, reveals clear evidence that appellants' demand was not based upon proper factual foundation and legal theory, and that it was therefore unreasonable. Appellants presented evidence to the contrary. But, in light of the Nave declaration it cannot be said as a matter of law that appellants' demand was reasonable.

Appellants failed to comply with the statutory requirement that they make a timely demand. Further, substantial evidence supported the trial court's implicit finding that respondent's offer was reasonable. Therefore, whether appellants' demand was reasonable or not, their motion was properly denied.

The order is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.