[No. F007646. Fifth Dist. Apr. 19, 1988.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent, v. GARDELLA SQUARE et al., Defendants and Appellants.

560

562

**COUNSEL**

Desmond, Miller, Desmond & Bartholomew, Richard F. Desmond and William T. Chidlaw for Defendants and Appellants.

Joseph A. Montoya, Gordon S. Baca, James W. Lemmond, Charles P. Valdes and Charles E. Spencer, Jr., for Plaintiff and Respondent.

**OPINION**

**FRANSON, P. J.—**

### STATEMENT OF THE CASE

Gardella Square (appellants), owners of property condemned by the Department of Transportation (respondent), appeal from the judgment and order awarding prejudgment interest only from the date respondent took actual possession of the property and from the order denying their motion for litigation expenses.

Two basic issues are presented: (1) Where the condemnation award is based on respondent's acceptance of appellants' final demand for "compensation" under Code of Civil Procedure section 1250.410,[1] can appellants thereafter seek prejudgment interest on the award based on an inverse condemnation constructive taking theory alleged in their answer? and (2) Are appellants entitled to claim litigation expenses pursuant to section 1250.410 where respondent accepted appellants' final demand for compensation after the original trial date but more than 30 days before the continued trial date?

For the reasons set forth below, we answer both questions in the affirmative and reverse the judgment and order.

### STATEMENT OF FACTS

Gardella Square, a partnership, was formed in 1979 to acquire a 20-acre parcel of unimproved property in Tuolumne County for the purpose of developing a regional shopping center. After the property was purchased in 1979, appellants obtained loans to finance the purchase price, pay taxes, retain real estate brokers to obtain leases with future tenants and otherwise develop the property. About the same time, respondent was exploring the possibility of constructing a highway bypass in the area. Eventually respondent determined that the bypass should run through appellants' property.

It was respondent's policy to take legal possession of condemned property only when it was physically needed for project construction. The bypass project was not scheduled for construction until 1986. Nevertheless, on June 24, 1982, the California Transportation Commission adopted a Resolution of Public Use and Necessity acknowledging that respondent had to

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

file an eminent domain action to keep the property from being further developed.

Respondent filed a condemnation action on July 14, 1982, seeking approximately one-half of appellants' parcel. Appellants answered and raised affirmative defenses claiming they were deprived of the use, enjoyment and benefit of their property because they could no longer develop it. Appellants alleged they had met all requirements for county permits and entitlements for construction except for a state encroachment permit. Respondent delayed processing the encroachment permit to prevent construction of the shopping center. If respondent had not delayed, all entitlements would have been received before the end of 1981, construction would have been completed before the end of 1982, and appellants would have been able to make payments on their loans. As a result of the delay as well as respondent's refusal to take possession and deposit probable just compensation, appellants were unable to meet loan commitments and were faced with foreclosure. Appellants alleged that respondent's precondemnation activity, which stopped development of the property, constituted a taking and entitled appellants to inverse condemnation damages for loss of use of its principal from that date to date of payment of the final award.

Appellants filed a voluntary petition in bankruptcy on October 14, 1983. The condemnation action was removed to the United States Bankruptcy Court and then transferred to the United States District Court for trial.

The district court held a settlement conference on April 4, 1984, and the parties agreed to the following. Respondent would deposit $1,550,000 with the state treasury against the probable just compensation to be awarded. The complaint would be amended to reflect a total take of the property. The parties would leave to trial the issues of market value of the property and damages by reason of any alleged constructive taking. Appellants waived all precondemnation activity claims before July 14, 1982, including but not limited to interest, damages and litigation costs, including attorney's fees. There was no waiver for damages for constructive taking after July 14, 1982. The date of valuation would be the date of deposit of probable just compensation with the state treasurer. The case was then remanded to the superior court. On September 18, 1984, the state deposited the probable just compensation sum.

Trial was set for September 9, 1985. On July 3, 1985, appellants filed and served on respondent a section 1250.410 final demand for compensation in the proceeding of $2,850,000. On July 23, 1985, respondent filed and served

on appellants a final offer of $1,550,000 representing the amount already deposited under the federal court agreement.

In early September, trial was continued to October 1 and then to October 30 by stipulation. On the latter date, the trial court set aside the federal court stipulation waiving the constructive taking damage claims[2] and continued the trial on appellants' unopposed motion to April 14, 1986.

In January 1986, respondent obtained an ex parte order authorizing possession on April 15, 1986. In late January the parties also reopened settlement negotiations. On January 28, respondent served appellants by letter with an amended offer of $2,450,000, exclusive of litigation costs. The letter provided that the offer "includes compensation for all . . . claims including precondemnation activity damages, and any interest or claim of damages resulting from the filing of the suit, . . ."

On February 5, 1986, appellants served respondent by letter with an amended demand of $3,885,000. The letter specified that "[t]his sum includes principal of $2,850,000.00 as set forth in our formal demand of June 13, 1985, litigation expenses . . . in the total amount of $840,000.00, and interest of $195,000.00."

On February 7, 1986, respondent accepted appellants' original statutory demand of $2,850,000.

Appellants then moved for an award of prejudgment interest. The motion sought to determine three questions: (1) the date from which prejudgment interest accrues; (2) the rate of prejudgment interest to which appellants are entitled; and (3) the total amount of prejudgment interest to be included in the judgment. The motion was made on the grounds that "defendants are entitled to prejudgment interest from the date of taking, damaging and/or possession, whether constructive, authorized or actual." The court awarded interest only from April 15, 1986, the date respondent actually took possession of the land pursuant to the order of possession.

Thereafter, appellants moved for an award of litigation expenses pursuant to section 1250.410. The motion was also denied.

---

[2] Appellants nevertheless claimed below and claim on appeal that they are entitled to prejudgment interest only from July 14, 1982, the date the action was filed. Their theory is that the filing of the condemnation action effected a constructive taking of their property because the development of the shopping center came to a complete halt.

## DISCUSSION

I. *Where the condemnation award is based on respondent's acceptance of appellants' final demand for compensation under section 1250.410, appellants may seek prejudgment interest on the award under section 1268.310 based on an inverse condemnation claim alleged in the answer to the condemnation complaint.*

 A. *The prejudgment interest claim was not included in appellants' section 1250.410 demand.*

Section 1250.410 provides in pertinent part: "At least 30 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. . . ."

The trial court did not refer to section 1250.410 when it ruled on appellants' motion for prejudgment interest but denied the motion pursuant to section 1268.310 (see subissue B, *post*). However, it did find in the condemnation judgment that appellants' statutory demand in the amount of $2,850,000 was "full and total compensation," "including . . . all . . . interest . . . based upon precondemnation activities of plaintiff as alleged in defendants' pleadings."

We first must analyze the trial court's finding that appellants' statutory demand of $2.85 million represented "full compensation," including all interest based on respondent's precondemnation activities. It is not clear whether the trial court was making this finding as a matter of law based on its interpretation of the meaning and intended purpose of section 1250.410 or whether it was making a finding of fact from the evidence that appellants intended their final statutory offer to include the claim for inverse condemnation damages, i.e., prejudgment interest, as well as compensation for the value of the land taken. To answer the question we look to the trial court's ruling on the motion for prejudgment interest. In its ruling, the court noted that respondent was asserting that interest should be awarded pursuant to section 1268.310 from the date the court ordered possession. Appellants, however, were asserting that interest should run from the time the action was commenced in July 1982 because on that date respondent had "effectively stopped all development and rendered the land useless to [appellants]." The judge noted that appellants had cited *Manke* v. *Airport Authority of Washoe County* (1985) 101 Nev. 755 [710 P.2d 80] as authority for their position.

The judge ruled that although the *Manke* facts were "very similar" to the present case, *Manke* was contrary to California law. "Section 1268.310 does not provide [prejudgment interest] for implied or constructive possession of property by the condemnor and California cases have followed the rules set forth in that section." The court then found that appellants were entitled to interest from the date of actual taking of possession at the rate of 10 percent. Thus, it is clear the trial court denied appellants' motion for prejudgment interest from July 14, 1982, solely on its interpretation of section 1268.310 and not on any evidentiary basis.

■ Even if we examine the record for a factual basis for upholding the trial court's finding that respondent's acceptance of appellants' statutory demand included appellants' inverse condemnation claim, we would conclude there is insufficient evidence to support the finding. In fact, the evidence shows to the contrary—that appellants intended their final demand for compensation in the sum of $2,850,000 to include only the value of the land, and this intent was communicated to respondent before it accepted appellants' final demand.

When respondent made its original offer of $1,550,000 in response to appellants' demand of $2,850,000, respondent asked for proof that the fair value of the property was in excess of $2.8 million. Appellant referred respondent to various documents which indicated a market value of $2,750,000. This evidence supports an inference that respondent knew from the outset that appellants' $2,850,000 demand was for the value of the land to be taken. Later, after the original trial date had been continued, respondent made an amended offer of $2,450,000 and specified that the new amount included compensation for all claims including those for precondemnation activity damages and interest. However, appellants then served respondent with a new nonstatutory demand of $3,885,000 which specified *that $2,850,000 included the principal as set out in the earlier demand,* litigation expenses of $840,000 and interest of $195,000. Again, respondent was clearly on reasonable notice before the case was settled that appellants' original demand for compensation encompassed only their claim for the fair market value of the land taken and not their claim for prejudgment interest or litigation expenses.

We therefore must determine whether, under section 1250.410, appellants' "final demand for compensation in the proceeding" necessarily included their claim for inverse condemnation damages. That determination turns on the legislative meaning of the word "compensation" in section

1250.410. ■ Respondent contends the word includes as a matter of law all damage claims alleged in the pleadings such as a claim for prejudgment interest based on a constructive taking theory. The purpose of the statute is to promote settlement of valuation and damage claims which otherwise would have to be tried. Thus respondent argues, "it [the statute] is intended to require each side to submit a final figure for which it is willing to settle those issues," citing *Los Angeles County Flood Control Dist.* v. *Mindlin* (1980) 106 Cal.App.3d 698, 719 [165 Cal.Rptr. 233]. However, *Mindlin* should not be so construed. It held only that a final offer conditioned on a right to appeal issues which could effect the determination of value was not a final offer within the meaning of section 1250.410.

Appellants cite *Coachella Valley County Water Dist.* v. *Dreyfuss* (1979) 91 Cal.App.3d 949 [154 Cal.Rptr. 467] for the proposition that the demand for compensation does not include prejudgment interest. *Dreyfuss* observed the section was designed to encourage settlement of valuation disputes by requiring the condemning agency to reimburse the property owner for litigation expenses in cases of unnecessary litigation. The section initially used the words "final offer to the property" and "final demand for the property." But when it was recodified as section 1250.410, the language was changed to read final offer and final demand "of compensation in the proceeding." *Dreyfuss* noted that the legislative committee comment to the section (legis. committee com., 19 West's Ann. Code Civ. Proc. (1982 ed.) § 1250.410, p. 674) states that the new section continues the substance of the former section " 'making clear that the offer and demand are to cover all of the compensation in the proceeding, including injury to the remainder, if any, and not merely the value of the part taken.' " (91 Cal.App.3d at p. 954.) The *Dreyfuss* court did not read the change in the statutory language to reflect an intention to require the offer and demand to cover items other than the value of the part taken and damage to the remainder. "Since the purpose of the section is to promote settlement of *valuation and damage disputes* which otherwise would have to be tried, it is intended to require each side to submit a final figure for which it is willing to settle *those issues*. This is the meaning of the word 'compensation' as it is used in section 1250.410. The eminent domain law makes a distinction between 'compensation' and recoverable interests and costs; it provides for interest on the 'compensation awarded in the proceeding' (§ 1268.310) . . . in addition to the award of compensation." (*Id.* at p. 954, italics added.)

The court rejected the argument that if a property owner could claim additional amounts after his statutory demand was accepted, it would have

a chilling effect on settlement of eminent domain cases. "The amounts of those items [interest and costs] are readily ascertainable within reasonable limits of accuracy so that the condemner would not, as plaintiff contends, be subjecting itself to an open-ended liability of unknown magnitude by accepting a property owner's final demand." (*Id.* at p. 955.)

*Dreyfuss* holds that the word "compensation" as used in section 1250.410 was not intended to include interest on the award for "prejudgment possession" by the condemner. (*Id.* at p. 953.) The quoted language is broad enough to encompass prejudgment *constructive possession* as well as actual possession. Thus, absent some evidence showing that the parties intended otherwise, the word "compensation" in section 1250.410 may be construed to exclude a claim for interest not only from the date of actual possession but also from the date of any alleged constructive taking of possession by the condemning authority.

Respondent contends *Dreyfuss* is not dispositive because it involved an interest claim based on an actual prejudgment possession by the condemner, an award which was readily ascertainable once the parties agreed on compensation. In this case, appellants seek interest based on an inverse condemnation constructive taking before actual possession was taken. Respondent argues that constructive taking issues are not as readily ascertainable as the calculation of interest from the date of an actual predetermined date of taking. Thus, to allow appellants after the settlement to request prejudgment interest based on a damages theory other than the loss of the use of their principal from the date of the actual taking would negate the purpose of the statute which is to encourage settlement and avoid unnecessary litigation.

Respondent's argument is not convincing. The proof of a constructive taking or nontaking before the date of actual taking will not be so time consuming or difficult to try that we should interpret section 1250.410 as foreclosing the recovery of interest after a statutory settlement is reached if the constructive taking is proved. If the condemning authority intends to include the interest claim in its offer or acceptance of its demand for compensation, it will be a simple matter to express this intent in the document. Absent any such evidence of intent, the interest claim should be excluded from the settlement.

B. *Section 1268.310 does not preclude an award of interest when the owner alleges a constructive taking based on an inverse condemnation claim.*

 The trial court held appellants were entitled to interest only from the date respondent took actual possession of the property because section 1268.310 does not provide for interest based on implied or constructive possession by the condemner.

Section 1268.310 provides: "The compensation awarded in the proceeding shall draw interest . . . from the earliest of the following dates:

"(a) The date of entry of judgment.

"(b) *The date the plaintiff takes possession of the property.*

"(c) The date after which the plaintiff is authorized to take possession of the property as stated in an order for possession." (Italics added.)

The Law Revision Commission comment states the revised statute deleted the phrase "or damage [to the property] occurs" from subdivision (b). However, "[t]he deletion of this phrase is not intended to affect any rules relating to the time of accrual of interest on a cause of action based on inverse condemnation, whether raised in a separate action or by cross-complaint in the eminent domain proceeding. [Citations.]" (19A West's Ann. Code Civ. Proc. (1982 ed.) § 1268.310, p. 148.)

 The right to interest in a condemnation proceeding arises from the judgment and, ordinarily, interest commences from that date. However, where property is taken or damaged prior to judgment, the landowner's right to just compensation includes the right to have the award draw interest from the date of possession or the date the property was damaged. (*City of Oakland* v. *Nutter* (1970) 13 Cal.App.3d 752, 775 [92 Cal.Rptr. 347] [construing the prior statute].)

 Appellants' request for interest is based on their inverse condemnation claim raised in their answer to the eminent domain proceeding. At the hearing on the motion for prejudgment interest appellants offered to prove that before the condemnation action was filed in July 1982 "[l]eases had been developed, the shopping center was ready to go and the development

permit had been obtained. . . . The property was of no use for anything except the development of a shopping center. . . . The action had been filed to protect 'from further development of the property.' The action caused the bankruptcy proceedings and attempted foreclosures. The owners could not sell the property, develop it or do anything with it from the date of recording the lis pendens. The property was of absolutely no use whatsoever after suit was filed. . . ."

■ In *Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790 [214 Cal.Rptr. 904, 700 P.2d 794], the Supreme Court acknowledged that when private property is taken for public use the "just compensation" to which the owner is constitutionally entitled is the full and perfect equivalent of the property taken. The owner must be put in as good position pecuniarily as he would have been if his property had not been taken. Therefore, if the government pays for condemned property after taking and using it, the owners are entitled to an award of interest on the compensation eventually paid as reasonable reimbursement for the delayed payment. (*Id.* at pp. 796-797.)

The same rule applies when the taking is by inverse condemnation. ■ Under the California Constitution, article I, section 19, compensation is required when property is "taken or damaged." In California, the technical distinction between "taking and damaging" has been blurred and the terms are generally interchangeable. (*Tilem* v. *City of Los Angeles* (1983) 142 Cal.App.3d 694, 702 [191 Cal.Rptr. 229].)

The concept of "taking" has evolved from the notion of a physical seizure to that of a diminution of the owner's rights and attributes of ownership. Accordingly, the rule has developed that a cause of action for inverse condemnation arises from a governmental invasion or appropriation of a valuable property right which directly and specifically affects the landowner to his injury. (*Id.* at p. 702; see also, *First English Evan. Luth. Ch.* v. *Los Angeles Cty.* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378]; *Nollan* v. *California Coastal Com'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141].)

■ Neither the parties nor this court has located any California case which specifically addresses the issue at bench. Appellants cite *Manke* v. *Airport Authority of Washoe County, supra,* 101 Nev. 755 [710 P.2d 80], which arose out of a similar factual situation. There, the airport authority

brought a condemnation action to acquire Manke's vacant, unimproved commercially zoned property in order to create a clear zone adjacent to the airport. The owners were in the initial stages of developing a shopping center on the property. The jury found the fair market value of the property on the date of service of summons to be $568,100. The court awarded interest on that amount from the date of judgment. On appeal, the owners sought modification of the judgment to include interest from the date the summons was served arguing the taking effectively occurred on that date. (*Id.* at p. 81.)

The Nevada Supreme Court agreed. Nevada statutes provided for valuation at the date of service of summons and precluded compensation for improvements made after the date of service. Consequently, development of the property was foreclosed from that date. (*Id.* at p. 81.) The court cited *Stewart & Grindle, Inc.* v. *State* (Alaska 1974) 524 P.2d 1242, which holds that where vacant and unimproved property is condemned, a taking occurs at the inception of the eminent domain proceeding.

"Before the institution of an eminent domain action, possession of unimproved and untenanted property is a desirable economic asset if: 1) the property may appreciate in value; and 2) the owner is afforded the opportunity to improve the property toward whatever end he might desire. Under the Alaska statutory scheme [which was essentially identical to Nevada's], an owner is deprived of both investment potential and the possibility of future development the moment a condemnation action commences. . . . [¶] Meanwhile, the owner remains liable for property taxes, mortgage payments, and any other expenses incidental to legal ownership. Indeed, the property is of less value to him in his own name than it would be had the State taken immediate legal possession under a declaration of taking, for at least in the latter case he would be delivered from the burden of the property taxes. . . ." (*Id.* at p. 1247, fn. omitted.)

The *Manke* court reasoned that its holding was buttressed by the fact that the burden placed on the owners from the date of service of summons (forbearance of development) directly corresponded to a benefit conferred on the state (creation of a clear zone adjacent to the airport). (*Manke* v. *Airport Authority of Washoe County, supra,* 710 P.2d at p. 82.)

Respondent submits *Manke* is distinguishable from the instant case because the airport authority achieved its objective as soon as the summons

was served. Here, respondent did not achieve its purpose of acquiring the land with service of the summons. Respondent's arguments must fail for two reasons. First, the determination of just compensation is measured by what the owner has lost rather than by what the condemner has gained. (*County of San Diego* v. *Bressi* (1986) 184 Cal.App.3d 112, 123 [229 Cal.Rptr. 44].) Second, respondent did benefit from filing and serving the action. Under section 1263.240 appellants could not be compensated for improvements made after service of summons. Respondent was able to maintain the status quo of the property as unimproved land by initiating the action. If respondent had not filed the action when it did, the property presumably would have been developed into a regional shopping center. Several years later when respondent needed the property for freeway purposes, the cost of acquisition would have reflected the improvements. By filing and serving the action, respondent intended to and did prevent any increase in the cost of the eventual acquisition of the land. Conduct evidencing a similar intent was found to amount to a taking in *Peacock* v. *County of Sacramento* (1969) 271 Cal.App.2d 845, 853, 855, 864-865 [77 Cal.Rptr. 391].

Although some California cases have denied prejudgment interest or damages when the public entity took vacant, unimproved property, those cases are distinguishable on their facts. In *City of Los Angeles* v. *Lowensohn* (1976) 54 Cal.App.3d 625 [127 Cal.Rptr. 417], the court withdrew the issue of precondemnation delay damages (pursuant to *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]) from jury consideration as unsupported by proof. While the court found the city had delayed unreasonably in bringing the condemnation action, there was no evidence the owners had been damaged by the delay. The landowners bought the land for investment purposes but made no improvements or attempts to rent or sell the property before the condemnation action commenced. (*Id.* at p. 636.)

Similarly, in *City of Los Angeles* v. *Waller* (1979) 90 Cal.App.3d 766 [154 Cal.Rptr. 12], the reviewing court refused to reverse a verdict finding no delay damages because the subject property was vacant land which had simply remained in that condition until condemnation finally occurred. The owners did not demonstrate the conduct of the condemner impaired their property rights during the interim. (*Id.* at p. 778.)

Other courts, however, have awarded inverse condemnation or precondemnation damages when the public entity's interference with vacant land

deprived the owners of the use or value of their property. In *Jones* v. *People ex rel. Dept. of Transportation* (1978) 22 Cal.3d 144 [148 Cal.Rptr. 640, 583 P.2d 165], the State Department of Public Works announced plans to construct a freeway that would cross a portion of plaintiffs' nine and one-half acres of undeveloped land. The freeway required the acquisition of approximately two and one-half acres of the property. The proposed freeway would have cut off access to the land, and without such access plaintiffs were unable to subdivide the property. Plaintiffs were unsuccessful in attempts to sell the property and eventually filed an action in inverse condemnation. They alleged the state acted unreasonably and oppressively thereby depreciating the value of their property and preventing its sale or development as a subdivision. After a jury trial, plaintiffs were awarded damages for diminution of the fair market value of their land and attorney fees and costs. Several months later, the Legislature deleted the proposed freeway from the highway system.

The Supreme Court reversed and remanded to the trial court for a determination of damages sustained by plaintiffs from the date the subdivision map was disapproved until the freeway project was abandoned. The court held plaintiffs were entitled to recover damages as a matter of law since the evidence established plaintiffs purchased the property because of its value as a potential subdivision, that the proposed freeway would cut off access from the only public road until a new frontage road from the freeway was built and that without such access the property was not saleable as a subdivision. (*Id.* at p. 151.)

In a similar situation, *Tilem* v. *City of Los Angeles, supra,* 142 Cal.App.3d 694 affirmed an inverse condemnation award of damages. The city had proposed but later abandoned the taking of a 10-foot strip of land from plaintiff's undeveloped property. The city was liable for its precondemnation conduct because the proposed taking, in conjunction with the city's 10-foot setback requirement, rendered the vacant land virtually useless and impaired the owner's ability to sell the property.

We conclude, therefore, the constitutional requirement of just compensation for the taking or damaging of private property for a public use requires that section 1268.310, subdivision (b) be construed to allow an award of interest based on appellants' inverse condemnation claim. The language, "The date the plaintiff takes possession of the property" must be read to include a "constructive" taking of possession of the property upon proof of the essential elements of such a claim. Appellants pled the claim and were

entitled to an opportunity to prove their right to prejudgment interest damage on the claim. The matter should be remanded for a determination of this issue.

II. *Appellants are entitled to a hearing on litigation expenses pursuant to section 1250.410 where respondent accepted appellants' final demand for compensation after the original trial date but more than 30 days before the continued trial date.*

■ The property owner in an eminent domain action can recover litigation expenses only by meeting the requirements of section 1250.410. That section states: "(a) At least 30 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. Such offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. . . .

"(b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed . . . shall include the defendant's litigation expenses.

"In determining the amount of such litigation expenses, the court shall consider . . . other written offers and demands filed and served prior to or during the trial.

"(c) If timely made, the offers and demands as provided in subdivision (a) shall be considered by the court on the issue of determining an entitlement to litigation expenses."

Trial was originally set for September 10, 1985. On July 1, 1985, appellants filed and served a final demand for $2,850,000 pursuant to section 1250.410. On July 23, 1985, respondent made a final offer of $1,550,000.

At a pretrial conference the parties disagreed as to the effect of certain provisions of the federal court settlement agreement. On the day set for trial, at appellants' request, the court set aside the stipulation regarding

waiver of precondemnation activity claims. As a result, the trial date was continued to April 14, 1986.

In January 1986, respondent submitted an amended offer, and appellants replied with an amended demand. On February 7, 1986, respondent accepted appellants' original demand. Appellants moved for an award of litigation expenses pursuant to section 1250.410. Appellants claimed respondent's original offer was unreasonable, their demand was reasonable, and they were unreasonably required to litigate. The court denied the motion. It found the rescheduled trial date was the pertinent trial date and respondent's acceptance made 30 days before that trial date was the equivalent of a final offer for purposes of the statute. Since the acceptance was for the full amount of the demand, it was reasonable and appellants were not entitled to litigation expenses.

A. *For purposes of section 1250.410, the relevant trial date was the original date set for trial.*

■ Appellants rely on *City of San Leandro* v. *Highsmith* (1981) 123 Cal.App.3d 146 [176 Cal.Rptr. 412] which states in dicta that the original trial date was the proper date for measuring the 30-day period. To hold otherwise would encourage procrastination in making an offer or demand and would delay meaningful negotiations. The purpose of the statute is to encourage early settlement so trial can be avoided. To allow either party to gamble on a delay in the trial court would not serve the purposes of the statute. (*Id.* at p. 154; and see *Community Redevelopment Agency* v. *Krause* (1984) 162 Cal.App.3d 860, 865 [209 Cal.Rptr. 1].)

Respondent contends the *Highsmith* dicta is incorrect. Respondent points out the Legislature added the language "the date initially set for the trial of the action" to section 2024, subdivision (a) of the revised discovery act (completion of discovery "on or before the 30th day, . . . before . . ."). Thus, if the Legislature had intended the original trial date to be the relevant date in section 1250.410, it would have so specified.

However, section 1250.410 was amended in 1982, after the *Highsmith* decision was published. Presumably the Legislature was aware of the *Highsmith* language and approved it. (See *People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].)

Respondent next argues that it should have the right to reconsider its offer in light of the changed circumstances (vacation of the stipulation waiving precondemnation activity damages) that necessitated the trial con-

tinuance. However, this was not the reason for the continuance since the federal court stipulation made it clear there was no waiver of the constructive taking damage claim after July 14, 1982.

The evidence shows that in June 1985, respondent's counsel stated they were unable to prepare for a September trial date because extensive discovery remained to be done. The demand and offer were exchanged in July 1985. At that time neither of respondent's trial appraisers had completed his appraisal. Respondent relied on its precondemnation staff appraisal of $1,131,000 plus a developmental costs estimate to arrive at the statutory offer of $1,550,000. Respondent stated it could not verify appellants' developmental costs until October 1985 because appellants did not cooperate with discovery, but the record does not disclose any discovery motions or other attempts by respondent to acquire the information earlier.

Respondent's appraisers completed their appraisals between October 1985 and January 1986. One valued the property at $1,475,000, the other at $1,950,000.

At the litigation expense hearing below, respondent's counsel explained why the statutory offer was increased after the stipulation waiving precondemnation activity claims was vacated. Although he was reasonably certain appellants could not show precondemnation damages, litigation of that claim necessitated a longer trial, testimony of more parties and greater expense. In addition, the testimony could affect the jury's determination (presumably to appellants' benefit) in the condemnation valuation portion of the trial.

The court below did not consider this argument because it interpreted the section 1250.410 "date of trial" to refer to the continued trial date. The evidence on the issue of respondent's motivation for increasing its offer is conflicting. The court could infer respondent increased its offer because it believed the additional evidence aimed at showing an inverse condemnation taking might be improperly used by the jury to influence its decision on valuation. The court could also infer respondent increased its offer because when it finally completed its trial preparation it concluded the original offer was probably too low.

We conclude that under the reasoning of *City of San Leandro* v. *Highsmith, supra,* 123 Cal.App.3d 146, the original trial date was the proper date to use when determining whether the parties' final offer and demand were reasonable under section 1250.410. However, the reasonableness of

those amounts should be determined in light of the facts as each party knew them at the time the offer and demand were made.

The order denying litigation expenses should be reversed and remanded for a determination of appellants' entitlement to litigation expenses under section 1250.410 using the parties' offer and demand filed before the original trial date.

## DISPOSITION

The judgment is modified to provide that the agreed compensation award covers valuation of the subject property and does not include an amount for prejudgment interest based on appellants' inverse condemnation claim. The order awarding prejudgment interest is reversed and remanded for a determination of appellants' motion for prejudgment interest based on the inverse condemnation claim.

The order denying litigation expenses is reversed and remanded for a determination of appellants' claim for such expenses under section 1250.410 using the parties' offer and demand filed before the original trial date.

Ballantyne, J., and Brown (G. A.), J.,* concurred.

A petition for a rehearing was denied May 12, 1988, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 13, 1988.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.