Opinion
 

 KAUS, P. J.
 

 Plaintiff State of California (State) appeals from an award of litigation costs to defendant Sunshine Canyon, Inc., (Sunshine) pursuant to Code of Civil Procedure section 1250.410—formerly section 1249.3.
 
 [1]
 

 Facts
 

 The award—$50,820.15—stems from an eminent domain action—hereafter the “direct” action—instituted by the State Department of Transportation to condemn certain real property owned by Sunshine. Before trial the action was consolidated with an independent inverse condemnation proceeding brought by Sunshine, in which it alleged the taking and damaging of property not involved in the condemnation action. Thereafter, the parties engaged in settlement negotiations which got no closer than an offer by the State to settle the direct action for $60,000 and a lump sum demand of $175,000 by Sunshine for the direct as well as the inverse action. Sunshine never apportioned its demand to the two actions. The final offer by the State did not include an offer for the inverse action. Sunshine’s demand was conditioned on being accepted by April 21, 1977—somewhere between three and four weeks from the date the offer was transmitted to the State.
 
 [2]
 
 Further negotiations proved
 
 *602
 
 unsuccessful and the parties went to trial a few weeks later. Eventually Sunshine was awarded $128,819.36 in the direct action. In the inverse condemnation action it recovered $2,100; in addition, however, the State was ordered to cure a drainage problem caused by the taking.
 
 [3]
 
 Sunshine then moved the court for an order compelling the State to reimburse it for litigation costs in both actions. The court so ordered, awarding Sunshine $50,820.15 in the direct action and $30,560.97 in the inverse proceeding. The award in the direct action was, as noted, based on former section 1249.3 of the Code of Civil Procedure. The award in the inverse action was based on section 1036 of the same code.
 
 [4]
 
 The State appealed.
 

 Discussion
 

 It is, perhaps, well to understand what the State does
 
 not
 
 complain of in its appeal. Thus, no claim at all is made with respect to the award in the inverse action. With relation to the direct action, it is
 
 not
 
 asserted (a) that the State’s offer was reasonable as a matter of law, (b) that Sunshine’s offer was unreasonable as a matter of law as far as the amount demanded is concerned, or (3) that the amount awarded as litigation expenses was not supported by the record. What the State does rely on is a number of technicalities. Principally, it is claimed that Sunshine’s lump sum demand was “ineffective”
 
 [5]
 
 under section 1249.3 which should be strictly construed, that it was impermissible for Sunshine to put a deadline on its demand and that the trial court should have made express findings that the State’s offer was unreasonable and Sunshine’s was reasonable. We think the State is mistaken.
 

 As a remedial statute, section 1249.3 is entitled to a benign interpretation. The State’s absolutist position that a lump sum demand is
 
 *603
 
 never reasonable is incompatible with that rule of construction. A
 
 reductio ad absurdum
 
 will suffice: what if Sunshine’s lump sum demand had been for $75,000—far below the eventual recovery in just the direct action? Could the State be heard to say that the demand was void because it covered more than the direct action?
 

 We need not and do not hold that all lump sum demands comply with the statute. If the demand to settle the direct action had been lumped with a demand to settle an inverse claim to be tried separately some time in the future, the trial court would have had no basis for determining the reasonableness of such a demand without evaluating an inverse case that had not been tried—clearly an unreasonable burden. Where however, as here, the trial court at the time of its ruling knows the outcome of both the direct and the inverse action, the reasonableness of the demand for the former is easily ascertainable by looking at the result of both actions: the trial court is simply using the same “hindsight” it must use every time it passes on a motion for costs and expenses under section 1249.3 which demands that the motion be “viewed in the light of the determination as to the value of the subject property . . .” In sum: under the circumstances of this case, the fact that the demand was in a lump sum did not make it unreasonable as a matter of law.
 

 We are not impressed by the State’s analogy to cases that arose under other statutes designed to promote compromise, reward reasonableness and penalize intransigence, such as former section 997 and present section 998 of the Code of Civil Procedure. In both
 
 Hutchins
 
 v.
 
 Waters
 
 (1975) 51 Cal.App.3d 69 [123 Cal.Rptr. 819] and
 
 Randles
 
 v.
 
 Lowry
 
 (1970) 4 Cal.App.3d 68, 74 [84 Cal.Rptr. 321] it was held that lump sum offers to several plaintiffs did not satisfy the statutes. The difference between lump sum offers to several claimants and a lump sum offer to one party is so obvious that we need not belabor the point.
 

 Nor was it unreasonable as a matter of law for Sunshine to keep its demand open only until April 21, 1977—somewhere between three and four weeks after it was transmitted to the State. Nothing in the statute forces the condemnee to hold the offer good after it has commenced expensive trial preparations as seems to have been the case here. Again, we take no absolute position. Even a very modest demand by a condemnee may be unreasonable because it simply does not give the
 
 *604
 
 condemning agency sufficient time to evaluate it and obtain the necessary approvals. Here, however, the demand was open for several weeks. Nor does the record show any request by the State that it be kept open longer so that it might be given further consideration.
 

 The State argues that deadlines on demands run counter to the remedial purpose of the statute and points to the fact that its $60,000 was never withdrawn. The State is, of course, correct in one respect: section 1249.3, by its very terms, contemplates “revised or superseded offers and demands served and filed prior to
 
 or during
 
 the trial” (our italics) and directs that such offers and demands be considered in determining the amount of attorneys fees and other expenses. Nevertheless, nothing in the statute makes an award conditional on demands being kept open right through the trial and the State was always at liberty to reopen settlement negotiations.
 
 [6]
 
 In any event, we must assume that the trial court gave due consideration to the fact that after April 21, 1977, the State had no outstanding demand to accept—just as it surely considered that the State never raised its pretrial offer of $60,000.
 

 Finally, the State complains that the trial court did not make express findings to the effect that the State’s offer was unreasonable and that Sunshine’s demand was reasonable—the statutory predicates for the granting of Sunshine’s motion.
 

 That motion was not the kind of proceeding which requires findings under section 632 of the Code of Civil Procedure, either because it was not a “trial”
 
 (In re Marriage of Simmons
 
 (1975) 49 Cal.App.3d 833, 836-837 [123 Cal.Rptr. 213]) or, more correctly perhaps, because it was part of a special proceeding under part 3 of the Code of Civil Procedure, in which, generally speaking, findings are not required.
 
 (In re Helen J.
 
 (1973) 31 Cal.App.3d 238, 244 [107 Cal.Rptr. 106].) That rule is subject to an exception in proceedings of “tremendous consequence” such as proceedings under section 232 of the Code of Civil Procedure to have children declared free from parental custody and control.
 
 (In re Rose G.
 
 
 *605
 
 (1976) 57 Cal.App.3d 406, 418 [129 Cal.Rptr. 338].) A motion under section 1249.3 hardly qualifies for such a lofty classification.
 
 [7]
 

 Affirmed.
 

 Stephens, J., and Ashby, J., concurred.
 

 A petition for a rehearing was denied July 16, 1979, and appellant’s petition for a hearing by the Supreme Court was denied August 22, 1979.
 

 [1]
 

 Since the proceedings were started before July 1, 1976, former Code of Civil Procedure section 1249.3, and not Code of Civil Procedure section 1250.410, is actually the relevant statute in question. (See Code Civ. Proc., § 1230.065.) Nevertheless, the distinction is largely meaningless since “[sjection 1250.410 continues the substance of former Section 1249.3 . . .” (Legis. Com. com. to § 1250.410.)
 

 [2]
 

 Not wishing to raise Sunshine’s expectations, the State’s initial offer for both cases was in the neighborhood of $15,000. A few days before the $60,000 offer was finally made, the State was still at $25,000.
 

 [3]
 

 Sunshine asserts—without contradiction but also without support in the skeletal record filed here—that the value of the injunctive relief granted is in excess of $25,000.
 

 [4]
 

 § 1036: “In any inverse condemnation proceeding brought for the taking of any interest in real property, the court rendering judgment for the plaintiff by awarding compensation for such taking, or the attorney representing the public entity who effects a settlement of such proceeding, shall determine and award or allow to such plaintiff, as part of such judgment or settlement, such sum as will, in the opinion of the court or such attorney, reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.”
 

 [5]
 

 The inconsistency may be only semantic, but the State, at times, characterizes Sunshine’s demand as “ineffective,” while at others it claims that its alleged defects made it “unreasonable” under section 1249.3.
 

 [6]
 

 The propriety of putting deadlines on demands was inferentially recognized in
 
 Coachella Valley County Water Dist.
 
 v.
 
 Dreyfuss
 
 (1979) 91 Cal.App.3d 949, 956 [154 Cal.Rptr. 467], where the court said: “. . . Absent revision or supersession of a final offer or demand
 
 or unless a time limitation is prescribed in the offer or demand itself,
 
 the final offer of demand would be subject to acceptance at any time before or during trial. . . .” (Italics added.)
 

 [7]
 

 If our conclusion that no findings were necessary is opposed to a dictum in
 
 Los Angeles Unified Sch. Dist.
 
 v.
 
 C. F. Bolster Co.
 
 (1978) 81 Cal.App.3d 906, 916-918 [146 Cal.Rptr. 789]—which we doubt—we decline to follow it.