[No. D002014. Fourth Dist., Div. One. Sept. 23, 1986.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
JOHN WOODWARD et al., Defendants and Appellants.

**COUNSEL**

Goebel, Shensa & Beale and Louis E. Goebel for Defendants and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Bruce W. Beach, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**KREMER, P. J.**—Defendants John Woodward, Minntaholia Woodward and Woodward Sand Company (Woodward) appeal an order denying their motion for payment of eminent domain litigation expenses under Code of Civil Procedure[1] section 1250.410. We find substantial evidence supports the trial court's determination the County of San Diego's (County) offer was not unreasonable and Woodward's demand was. Accordingly, we affirm.

I

In late 1981 County employees began negotiating with Woodward about a public bridge improvement proposed for land owned by Woodward.

In June 1982 the County gave Woodward a copy of real property appraiser Gerald Kibbey's report valuing the property involved at $54,600.

In August 1982 the County sued Woodward in eminent domain and deposited $54,600 with the court. (§ 1266.010, subd. (a).)

In October 1982 Woodward answered the County's complaint; the County took possession of the property under a writ of possession; the court ordered withdrawal of $53,600 payable to Woodward; and the parties filed at issue memoranda. The court scheduled settlement conference for June 3, 1983, and trial for September 6, 1983.

In November 1982 the County filed and served its demand for exchange of valuation data. (§ 1258.210 et seq.)

On August 2, 1983, the matter was not settled at the continued settlement conference.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

On August 5, 1983, the County filed and served its final offer of $65,000 for taking Woodward's property. (§ 1250.410, subd. (a).)

On August 8, 1983, Woodward filed and served two final demands, one for $538,000 and the other for $380,000. (§ 1250.410.)

On August 31, 1983, Woodward served and filed a statement of valuation data consisting of John Woodward's opinion total compensation should be $670,555.

## II

In December 1983 Woodward hired new counsel. In December 1983 and January and February 1984, the matter was tried to a jury. Kibbey and John Woodward testified about their valuation opinions.

According to John Woodward's testimony, compensation due him from the County was $670,495. Valuing his property at $80,000 per acre, Woodward claimed $67,200 for .84 acre taken in fee; $16,640, $28,800 and $4,480 for permanent easements on .26 acre, .45 acre and .07 acre; $148,680 for permanent damages from a 4.13-acre temporary construction easement resulting in 4.6 nonusable acres; $213,720 for severance damages to the remainder property due to diminished access and increased difficulty and inconvenience of operations; $68,475 for buildings, improvements, equipment and personal property; and $150,000 for lost goodwill. Woodward valued special benefits to the remainder property at $27,500.

According to Kibbey's testimony, compensation due Woodward from the County was, in round numbers, $65,000. Kibbey valued the buildings, improvements and equipment at $38,875 and the land at $25,976. Kibbey appraised the land taken at $12,688 per acre, including the present value of sand to be extracted in the future and the $6,000 per acre reversionary value of the land itself. Kibbey valued the fee taken at $10,658; slope easements at $2,968, $5,139 and $799; damages for 18 month's use of the 4.13-acre temporary construction easement at $6,320; and damages for one year's use of a .06-acre temporary construction easement at $92. Kibbey found $59,400 severance damages to the remainder property at $5,000 per remainder acre resulting from diminished access and increased difficulty and inconvenience of use. Kibbey found such severance damages were outweighed by $81,700 special benefits accruing to the remainder property from the newly constructed bridge and road, realignment of the San Diego River's floodway lanes and enhanced potential commercial use of part of the property under the applicable general plan.

The jury found as of the August 11, 1982, valuation date compensation for Woodward's interest in the property being acquired was $89,159, compensation for improvements was $38,875, compensation for lost goodwill was zero, compensation for severance damages to the remainder property was $203,647, and the amount of special benefits accruing to the remainder property was $31,780.

The court entered judgment for condemnation awarding Woodward $299,901 less the $53,600 previously withdrawn.

### III

Woodward filed a motion for payment of litigation expenses, including attorney fees, appraiser fees, engineering fees and professional consultant fees. Woodward asserted the County's final offer was unreasonable and Woodward's final demand reasonable in light of the evidence admitted and the compensation awarded. The County opposed Woodward's motion.

After hearing, the court denied Woodward's motion for payment of litigation expenses. The court found: "[T]he County was really on the horns of a dilemma. They had an appraisal from Mr. Kibby [sic]. Mr. Kibby's [sic] testimony during the course of the trial made a certain amount of sense to me. I couldn't really argue very strenuously against it.

"The County didn't have any other expert that came up to them and said, look, the property is worth three times as much as your appraiser and for these reasons, and specified those reasons, one, two and three.

"On the contrary, there was no appraisal and no indication of any of the things of the Woodwards as to why they felt they should have more than $65,000 other than the pie-in-the-sky claim they had of $500,000 at one portion of the afternoon and one 380,000 at another portion of the afternoon. This isn't the kind of case that—where any kind of an examination could have been made as to the disparity in expert opinions and with an effort to reasonably come to some kind of compromise. It just wasn't that kind of case.

"I wouldn't have been shocked if the jury came back with what Kibby [sic] had offered as far as value of the property was concerned, and the jury took into account certain factors that made them feel that the property was worth considerably more.

"Under the peculiar facts of that case, I just can't feel that the County was acting in bad faith in which they negotiated, and I feel contrarywise,

that it was a source of great frustration up until [December 1983 when new counsel] came into the picture, as far as the County was concerned. . . ."

The court entered an order denying Woodward's motion for payment of litigation expenses. Woodward appeals.

## IV

Section 1250.410 reads: "(a) At least 30 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. Such offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. . . .

"(b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses.

". . . . . . . . . . . . . . . . . . . . . . .

"(c) If timely made, the offers and demands as provided in subdivision (a) shall be considered by the court on the issue of determining an entitlement to litigation expenses."

■ Section 1250.410's purpose is to ". . . promote settlement of valuation disputes in eminent domain proceedings and guarantee full recompense to the landowner in case of unnecessary litigation [citation]." (*State of California* ex rel. *State Pub. Works Bd.* v. *Turner* (1979) 90 Cal.App.3d 33, 38 [153 Cal.Rptr. 156] (hereafter *State* v. *Turner*).) Effective July 1, 1976, section 1250.410 substantially reenacted former section 1249.3. "The new section attempted to clarify the word 'reasonable' by requiring the reasonableness of the final offer by the condemner be viewed not only by referring to the compensation awarded, but also in light of the evidence admitted. [Citation.]" (*Id.,* at p. 36, fn. 1.)

## V

■ Woodward contends the court should have awarded litigation expenses, asserting the uncontradicted evidence as a matter of law required a

finding the County's offer was unreasonable. Woodward further asserts in light of the fact the compensation the jury awarded was much closer to Woodward's demand than to the County's final offer, it was "patently obvious" Woodward's final demand was reasonable and the County's final offer unreasonable. ■ Woodward also asserts the County arbitrarily refused to compromise or give any weight whatsoever to Woodward's claim for severance damages. However, the record belies Woodward's contentions.

■ "The statute authorizing litigation costs in eminent domain proceedings does not contain specific criteria to permit a single mathematical analysis to determine when an offer is either reasonable or unreasonable. General guidelines, however, have been established, including these facts: '(1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and the award . . . and (3) the good faith, care and accuracy in how the amount of the offer and the amount of the demand, respectively, were determined.' [Citations.]" (*State* v. *Turner, supra,* 90 Cal.App.3d at p. 37.) In *Turner* the state offered the amount of its appraisal, $462,300. The owner demanded $600,000. The jury awarded $587,000. The trial court denied litigation expenses, finding both the offer and the demand were reasonable. On appeal, this court affirmed, finding "[t]he amount of the offer was clearly determined by the state with good faith, care and accuracy." (*Id.,* at p. 37.)

"The trial court sitting as the trier of fact is required to resolve various conflicts in the evidence and determine the credibility of witnesses, including the opinions of experts. [Citations.] In a condemnation proceeding the trial court must review, assess, evaluate and determine the competency of the respective appraisers, their degree of thoroughness, their accuracy, and the extent of their overall investigations.

"The determinations as to the reasonableness of the offers and/or the demands are also questions of fact for the trial court to determine. [Citation.] '[R]easonableness of the final offer and demand presents factual issues which depend not only upon the percentage of difference in the monetary amounts of the offer and demand but also on the good faith, care and accuracy in the determination of those amounts, all of which are matters to be evaluated by the fact finder. [Citation.] . . .' [Citation.]" (*City of El Monte* v. *Ramirez* (1982) 128 Cal.App.3d 1005, 1011-1012 [180 Cal.Rptr. 690].)

■ Section 1250.410 requires the trial judge to do more than just compare numbers. The 1975 statutory amendment enacting section 1250.410 directs the trial judge in determining whether to award litigation expenses to consider

all the evidence admitted, not just the numerical amounts of the offer, demand and award. The statute calls on the trial judge to make a discretionary determination of reasonableness after weighing all the evidence and assessing witness credibility independently of the jury.

"[T]he mathematical relation between the plaintiff's highest offer and the award is but one factor to be considered by the trial court under the new statute. Section 1250.410 requires the court to evaluate the reasonableness of the plaintiff's offer in light of the award and the evidence adduced at trial. The trial court's determination of that issue is a resolution of a question of fact and will not be disturbed on appeal if supported by substantial evidence. [Citation.]" (*Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790, 808 [214 Cal.Rptr. 904, 700 P.2d 794].)

■ This case goes peculiarly to credibility. At trial the parties presented conflicting evidence bearing on the issue of the reasonableness of the County's offer and Woodward's demand. In denying Woodward litigation expenses after hearing the evidence admitted at trial and assessing the witnesses' credibility, the court found Kibbey's testimony ". . . made a certain amount of sense to me. I couldn't really argue very strenuously against it. . . . [¶] [and] wouldn't have been shocked if the jury came back with what Kibby [*sic*] had offered as far as value of the property was concerned, . . ." The court also found, in effect, Woodward's demands were not reasonable.

At trial the County presented the testimony of Kibbey, a well-qualified independent appraiser with 32 years in the real estate business. Woodward did not challenge Kibbey's qualifications. Kibbey used the market comparison and income approaches in determining the value of the property taken was $65,000. Kibbey looked at Woodward's property, viewed maps and talked to Woodward's employees to gather information about the property, its uses, background and improvements. Kibbey considered zoning information, the general plan, use permits, sand royalty rates, comparable leases and utility availability. Kibbey also collected information about other properties in the area and their sales to determine if they were comparable. Kibbey based the $6,000 per acre reversionary valuation on the value of other properties in areas with similar floodway and floodplain combinations. In appraising the improvements taken, Kibbey used the depreciated cost method. He measured the improvements, observed their condition, considered the buildings' ages and used a published valuation service for equipment. Kibbey also testified an appraiser using the market comparison approach to determine land's fair market value may not properly rely on someone's statement as to what he would pay for the property if it were for sale. Woodward did not contend Kibbey tried to keep the values low or otherwise mistreat Woodward. (*State* v. *Turner, supra,* 90 Cal.App.3d at p. 37.)

At trial Woodward testified he had no training in real estate appraisal. Woodward based his claim for $670,495 on his ownership of the property, his 50-year personal experience in the rock and sand business and the price others in the trade told him they would pay if his property were for sale. In valuing the property Woodward also considered its location and use permits for the sand business. He did not base his opinion on sales of comparable properties.

On this evidence we cannot second guess the trial judge's finding the County's offer was not unreasonable. The record also supports the judge's finding Woodward's demands were not reasonable.

■ Section 1250.410's purpose is to promote settlement of eminent domain valuation disputes and guarantee full recompense to the landowner in case of unnecessary litigation. The statute's purpose is also "to impose upon *both* parties to the litigation the duty to act reasonably in an effort to settle the disputes." (*People* ex rel. *Dept. of Transportation* v. *Patton Mission Properties* (1979) 89 Cal.App.3d 204, 213 [152 Cal.Rptr. 485].) A purely mathematical examination of the offer, demand and award may be useful where the condemner is unwilling to compromise despite the condemnee's reasonable position. (*Id.,* at pp. 211-212.) However, such is not the case here. This is not a case where the condemner's offer ignored a landowner's expert's appraisal. (*County of Los Angeles* v. *Kranz* (1977) 65 Cal.App.3d 656, 660 [135 Cal.Rptr. 473].) This is not a case where the condemner engaged in "unyielding adherence" to its appraisal incompatible with the spirit of compromise. (*City of Gardena* v. *Camp* (1977) 70 Cal.App.3d 252, 257 [138 Cal.Rptr. 656].)

Before filing this lawsuit, the County retained Kibbey, a well-qualified independent appraiser. In June 1982 the County gave Woodward a copy of Kibbey's report appraising the property at $54,600. In August 1982 the County filed suit. Trial was set for September 6, 1983. In November 1982 the County demanded Woodward exchange valuation data at least 40 days before trial as required under section 1258.210 et seq. Woodward did not timely comply with the County's demand. On July 27, 1983, the County served its statement of valuation under section 1258.210 reflecting Kibbey's opinion of $65,000 value. As of the time of the settlement conference on August 2, 1983, Woodward had not provided the County with a statement of valuation or other valuation data. At the settlement conference Woodward's counsel admitted Woodward did not have an appraisal for the property; nonetheless, Woodward demanded $500,000 without providing supporting data, any data to contradict Kibbey's opinion, or any "real" reason for the County to reexamine its position. "While property owners should not be compelled to hire an expert and can rely on their own testimony

as to the value of the property, if they expect the state's expert to compromise they should be willing to supply good reason upon which to base such a compromise. We would not like to suggest the state's appraiser should compromise his opinion and offer more than the property was worth just to avoid litigation. . . ." (*State* v. *Turner, supra,* 90 Cal.App.3d at p. 38.) On August 5, 1983, the County filed and served its final offer of $65,000, the amount of Kibbey's appraisal. (§ 1250.410.) As of such time, Woodward had not provided the County with any appraisal information to support Woodward's position. (*City of El Monte* v. *Ramirez, supra,* 128 Cal.App.3d at pp. 1012-1013; *City of San Leandro* v. *Highsmith* (1981) 123 Cal.App.3d 146, 158 [176 Cal.Rptr. 412].) On August 8, 1983, Woodward filed and served two final demands of $538,000 and $380,000; Woodward did not provide valuation data to support these demands. On August 31, 1983, a week before trial, Woodward filed and served a statement of valuation data consisting of John Woodward's opinion the property was worth $670,555. Such statement was late under section 1258.210 et seq.

This record amply supports a finding the County's final offer was reasonable and the County did not maintain an unyielding position throughout the litigation incompatible with the spirit of compromise but instead acted in good faith.

At oral argument Woodward's counsel suggested if a trial court concludes the condemner's offer was reasonable and the condemnee's demand was unreasonable and thus denies litigation expenses, the court must also grant a new trial. A short answer is this record shows no motion for new trial by the County and we are not asked to decide whether the denial of any such motion would have been improper. Further, although inquiry under section 1250.410 and section 657 governing new trial motions may in some cases overlap by involving common underlying facts, the statutes address different issues and require different determinations.

Possible grounds for a new trial motion here would be excessive damages or insufficient evidence to justify the verdict. (§ 657, subds. 5, 6.) A new trial may not be granted upon either of such grounds ". . . unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (§ 657.) Under section 657, the court reweighs the evidence and grants a new trial if it decides the jury's verdict was against the weight of the evidence. However, under section 1250.410 the court decides not who should have won or lost the lawsuit, but instead whether in light of the evidence admitted and compensation awarded the parties' earlier actions were reasonable with respect to their willingness to bargain and assess the property's value in good faith. In

assessing "reasonableness" under section 1250.410, the court is to consider in addition to mathematical factors "the good faith, care and accuracy in how the amount of the offer and the amount of the demand, respectively, were determined." (*State* v. *Turner, supra*; 90 Cal.App.3d at p. 37.) The finding required under section 1250.410 is different from a finding as to the proper result of the lawsuit.

In denying Woodward litigation expenses, the court did not necessarily find the jury's verdict should have favored the County. The court simply found the County's earlier actions were reasonable and Woodward's unreasonable.

Citing *People* ex rel. *Dept. of Transportation* v. *Callahan Brothers* (1977) 69 Cal.App.3d 541, 544, the County contends Woodward forfeited the possibility of recovering litigation expenses by not filing a timely final demand when he thought the County's offer was unreasonable. Citing *Community Redevelopment Agency* v. *Krause* (1984) 162 Cal.App.3d 860, 865 [209 Cal.Rptr. 1] and *Lake County Sanitation Dist.* v. *Schultz* (1978) 85 Cal.App.3d 658, 662 [149 Cal.Rptr. 717], Woodward contends he substantially complied with section 1250.410's time requirements. However, we need not decide this issue given our holding substantial evidence supports the trial court's finding the County's offer was not unreasonable and Woodward's demand was.

The court acted within its discretion in denying Woodward's motion for litigation expenses.

DISPOSITION

The order denying litigation expenses is affirmed.

Butler, J., and Lewis, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 17, 1986. Bird, C. J., was of the opinion that the petition should be granted.