[No. H002633. Sixth Dist. May 4, 1988.]

SANTA CLARA VALLEY WATER DISTRICT, Plaintiff and Respondent, v.
ROBERT W. GROSS et al., Defendants and Appellants.

COUNSEL

Quentin H. Smith for Defendants and Appellants.

Norman E. Matteoni and Matteoni, Saxe & Nanda for Plaintiff and Respondent.

OPINION

BRAUER, J.—In this condemnation action, the property owners, Robert Gross and Yolanda Gross (hereafter collectively Gross), appeal from a postjudgment order which had denied them litigation expenses on the ground that they had not complied with Code of Civil Procedure section 1250.410. That statute provides that a property owner must file a final demand for compensation and the condemnor, here the Santa Clara Valley Water District (the Water District), must file a final offer, both at least 30 days prior to the trial date. Entitlement to litigation expenses is thereafter conditioned upon a finding that the condemnor's offer was unreasonable and the property owner's demand was reasonable, in light of the amount of the judgment and the evidence adduced at trial.[1]

---

[1] "(a) At least 30 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. Such offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. Service shall be in the manner prescribed by chapter 5 (commencing with Section 1010) of Title 14 of

Gross is a member of the board of directors of the Water District. Neither party made a section 1250.410 filing in this case because both believed that they were precluded from engaging in negotiations with one another by virtue of Government Code section 1090, which prohibits a board member from having any financial interest in any contract with his public agency or selling property to the agency.[2]

The issue on appeal is a narrow one, and appears to be a matter of first impression: Does Government Code section 1090 excuse compliance with Code of Civil Procedure section 1250.410? We conclude it does not, and we will affirm the order of the trial court.

### BACKGROUND

The complaint in eminent domain was filed January 29, 1985. After a trial setting conference January 22, 1986, trial was set for May 12, 1986, to determine the value of the property sought to be taken and the amount of severance damages suffered by Gross as a result of the taking. A settlement conference was held May 8, 1986. A settlement conference statement filed by Gross April 29, 1986, indicated that his expert's opinion of value and damages was $207,729. Gross himself claimed compensation in excess of $300,000. On the other side, the appraiser for the Water District set the value for the property at $25,405.

Trial was continued to June 30, 1986, and a second settlement conference was held on June 26. Gross filed his settlement conference statement on or about June 16, 1986. In that statement he claimed compensation in excess of $500,000 while his expert valued the property at $132,365 and severance damages at $119,272, for a total of $251,637. The adjusted estimate of value of the Water District was $30,375. Neither party filed or served a final offer or demand pursuant to section 1250.410.

The case went to trial without a jury. After receiving extensive evidence over several days, the court issued an opinion determining the total amount of compensation to be $69,501. Costs were awarded to Gross.

---

Part 2. [¶] (b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses. . . ." (Code Civ. Proc., § 1250.410.)

[2] "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity. . . ." (Gov. Code, § 1090.)

Gross then filed a motion under section 1250.410 for litigation expenses, including $23,500 in attorney's fees and $7,000 in expert witness fees.[3] The court denied Gross's motion, concluding that it had no authority to award litigation expenses because Gross had not complied with the statute.

## DISCUSSION

██ Section 1250.410 was enacted in 1975, replacing but not materially changing former section 1249.3. Its purpose is to encourage settlement of condemnation actions by providing incentives to a party who submits a reasonable settlement offer or demand before trial. (*People* ex rel. *Dept. of Transportation* v. *Callahan Brothers* (1977) 69 Cal.App.3d 541, 544 [138 Cal.Rptr. 239].) A property owner who files a reasonable demand, but is required nonetheless to litigate because of the public agency's unreasonable position, can be fully compensated for his litigation expenses. Conversely, a condemnor who makes a timely reasonable offer may avoid having to pay the property owner's expenses except for taxable costs. (*Ibid.*) Because plaintiff will invariably be a government agency, the 30-day period allows plaintiff's representative sufficient time to secure the agency approval necessary to complete a settlement after offers have been exchanged and before trial commences.

██ Except for cases where the action is dismissed or plaintiff's right to take is defeated (see Code Civ. Proc., § 1268.610), section 1250.410 provides the exclusive means for recovering attorney's fees in a condemnation action. (*City of San Leandro* v. *Highsmith* (1981) 123 Cal.App.3d 146, 153 [176 Cal.Rptr. 412]; *People* ex rel. *Dept. of Transportation* v. *Societa Di Unione E Beneficenza Italiana* (1978) 87 Cal.App.3d 14 [150 Cal.Rptr. 706].) ██ Furthermore, the final offer and demand filed under this section are the *only* amounts the court may consider in determining the entitlement (§ 1250.410, subd. (a)), and the court must find *both* that the owner's demand was reasonable *and* that the agency's offer was unreasonable. (*Community Redevelopment Agency* v. *Krause* (1984) 162 Cal.App.3d 860, 864 [209 Cal.Rptr. 1].) From this it follows that the property owner who submits no final demand whatsoever forfeits the possibility of recovering his litigation costs.

██ Gross argues that he could not comply with the filing requirement of section 1250.410 because of his position as a board member of the Water District and the proscription of Government Code section 1090. He claims

---

[3] Litigation expenses are defined in Code of Civil Procedure section 1235.140 and include reasonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were "reasonably and necessarily incurred to protect the defendant's interests . . . ."

section 1090 prohibits him from engaging in negotiations of any kind with the Water District.

We do not agree that these two statutes are irreconcilable. Section 1090 is a broadly drafted conflict-of-interest statute. It expresses a general policy that public officers and employees are to refrain from entering into transactions which will conflict with the performance of their official duties. (*City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259, 270 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313].) Once a condemnation action has been filed, however, the property owner and his agency become adversaries, subject to the rules of court and civil procedure which govern the course of litigation. A settlement achieved pursuant to these rules can be supervised by the court and receive the imprimatur of court confirmation. Government Code section 1090 is directed at dishonest conduct and at " ' "conduct that tempts dishonor" ' " (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 648 [214 Cal.Rptr. 139, 699 P.2d 316]); it has no force in the context of a condemnation action where the sale of property is accomplished by operation of law and each side is ordinarily represented by counsel.

Gross argues that the filing requirements of section 1250.410 were waived because the parties were virtually *compelled* by the bar of section 1090 to litigate, rather than settle, the matter of valuation. He places great reliance on the case of *Thomson* v. *Call, supra,* 38 Cal.3d 633. That case involved a transaction in which a corporation purchased land from a city council member and then conveyed it to the city. The council member had disclosed his interest in the transaction and had sought and followed advice from the city attorney. Even so, the court found that section 1090 had been violated and upheld the judgment of the trial court which not only had found the contract void, but also had provided that the city retain the land and the property owner return the purchase price plus interest.

It is understandable that the result in *Thomson* could have a chilling effect on a landowner contemplating the sale of his property to a governmental agency of which he is an elected member. Nevertheless we find that the *Thomson* case is not applicable here where the parties have availed themselves of a court of law to effect a sale by means of condemnation. In such a case the rules of procedure which apply to all litigants apply to them as well.

Furthermore, Gross's argument contains an inherent inconsistency. He has asserted that he engaged in settlement conferences with the Water District in good faith. Indeed he submitted his demands for compensation in two successive settlement conference statements. Yet he refrained from filing a final demand pursuant to section 1250.41 because of a perceived

conflict with Government Code section 1090. In our view compliance with section 1250.410 is no more likely to create an appearance of impropriety than participation in mandatory settlement conferences. "The Legislature [in § 1250.410] did not direct the parties to 'apprise' each other or 'communicate' with each other about an offer or demand." (*City of San Leandro* v. *Highsmith, supra,* 123 Cal.App.3d 146, 155.) Rather it directed that each file with the court, and serve upon the other, a formal offer and demand, as an absolute prerequisite to an award of attorney's fees. This procedure is not the equivalent of negotiations between the parties and consequently does not run afoul of section 1090.

■ The balance of Gross's appeal is devoted to arguments which for the most part rest upon factual determinations. In such cases we will uphold the trial court's assessment of the facts unless there is no substantial evidence to support it. " '[I]n the consideration of an appeal from an order made upon affidavits . . . involving the decision of a question of fact, an appellate court is bound by the same rule that controls it where oral testimony is presented for review. If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered as established.' " (*City of San Leandro* v. *Highsmith, supra,* 123 Cal.App.3d 146, 153, quoting *Fuller* v. *Lindenbaum* (1938) 29 Cal.App.2d 227, 230 [84 P.2d 155].)

■ First Gross contends that the Water District induced his noncompliance with section 1250.410 by representing to him that a letter from counsel for the Fair Political Practices Commission (the FPPC), citing Government Code section 1090, prohibited engaging in any exchange of offers and demands, and that the Water District, in reliance upon this letter, intended to proceed to trial without complying with the offer requirement of section 1250.410. While this raises an intriguing question whether the Water District could be estopped from asserting noncompliance with section 1250.410 as a bar to an award of attorney's fees, we find upon turning to the record that Gross's assertions lack factual support.

The motion was submitted upon the declarations of the two attorneys. This was the extent of the evidence. The letter from the FPPC attorney was not included in the record, though it was referred to by Norman E. Matteoni, attorney for the Water District, whose declaration said this: "The District and Defendant Robert Gross were directed by the FPPC not to discuss the case nor negotiate with each other. There could be no conduct giving rise to special treatment to or special access for a Board member." Regarding his authority to effect a settlement notwithstanding the direction of the FPPC, Matteoni's declaration continues: "Although the District Board felt it was in an awkward position, because it was dealing with one of its own

Board members, it did give the undersigned some authority for settlement." On this point opposing counsel's declaration was contradictory. Attorney Quentin Smith declared that he "personally made several attempts to open negotiations for settlement of this action," but that Matteoni "on each occasion informed me that, much to his regret, no specific authority was given to him to permit reaching agreement with respect to damages . . . ."

The trial court resolved this evidentiary conflict in favor of the Water District, explaining in its order: "It is the position of the Defendants [the Grosses] that they were precluded by the circumstances from being able to make a settlement offer to Plaintiff, and they base this contention on the alleged disclaimer of the attorney for the board as to having *any* settlement authority given to him by the board and also a letter of advice from the Fair Political Practices Commission of the State of California. [¶] The attorney for Plaintiff disputes the allegation that he lacked *any* settlement authority, but he admits he was under limitations in that regard. [¶] The Court accepts the affidavit of Plaintiff's counsel as accurately describing his limited settlement authority, but the Court holds that it has no authority to award the requested litigation expenses due to the statutory constraints placed upon it in view of the failure of the Defendants to comply with the statute."

Gross may well have been under the impression that compliance with section 1250.410 was prohibited by the FPPC letter. Without this letter before it, however, the trial court was unable to assess the extent to which the letter constituted a categorical directive to the parties to refrain from filing under section 1250.410. Matteoni's declaration says only that they were directed not to "discuss" or "negotiate" with one another. This does not necessarily preclude filing and serving a formal demand under section 1250.410. Without more it is impossible to determine whether Gross reasonably relied upon the FPPC letter in failing to pursue his rights under section 1250.410.

Moreover, with regard to Gross's assertion that his filing of a demand would have been a futile act in light of opposing counsel's representation that the Water District absolutely would not settle before trial, the court accepted a contrary version of counsel's representation, supported by competent evidence. Our inquiry need extend no further than this. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ Next Gross argues that compliance with section 1250.410 was excused or waived because the parties were in pari delicto; i.e. neither one complied. He relies upon *People* ex rel. *Dept. of Transportation* v. *Societa Di Unione E Beneficenza Italiana, supra,* 87 Cal.App.3d 14, 22. In that case

both the agency and the property owner filed their final offer and demand after the 30-day deadline. The agency then contended that the owner's failure to comply strictly with its terms should bar his recovery under the statute. The court held that such a result was inappropriate where the parties were "in pari delicto" in failing to observe the mandatory time limits.

This holding does not aid Gross's cause. Clearly there is a significant difference between failing to file in a timely manner and failing to file at all. While several courts have permitted recovery of litigation costs where there has been substantial compliance with the statute, none has done so where there has been no effort to comply whatsoever. Substantial compliance has been limited to those cases involving late filings. (*Community Redevelopment Agency* v. *Krause, supra,* 162 Cal.App.3d 860; *Lake County Sanitation Dist.* v. *Schultz* (1978) 85 Cal.App.3d 658 [149 Cal.Rptr. 717].) Furthermore, although it appears that parties may stipulate in advance to a waiver of the 30-day deadline (*City of San Leandro* v. *Highsmith, supra,* 123 Cal.App.3d 146, 155, fn. 6; *People* ex rel. *Dept. of Transportation* v. *Zivelonghi* (1986) 183 Cal.App.3d 187, 189 [228 Cal.Rptr. 72]), we are aware of no authority for the proposition that the parties can, expressly or impliedly, waive the mandate of the statute entirely.

■ On a slightly different tack, Gross points out that the condemning agency has a duty "to rigidly adhere to statutory procedures governing an eminent domain proceeding which it has instituted against a property owner." (*People* ex rel. *Dept. of Transportation* v. *Societa Di Unione E Beneficenza Italiana, supra,* 87 Cal.App.3d 14, 22.) His argument appears to be that his duty to file a demand is dependent upon the agency filing its offer first. We do not agree with this interpretation. No particular order of filing is determined by the statute. Were this a commercial setting, it would naturally be expected that an offer to purchase be tendered first. Here, however, the parties are subject to the rules governing eminent domain proceedings. Under Government Code section 7267 and Code of Civil Procedure section 1245.230, subdivision (c), the public entity is required to make a prelitigation offer to the property owner. After the complaint is filed, Code of Civil Procedure section 1258.210 provides a means for the parties to exchange lists of expert witnesses and valuation data. Thus by the time trial approaches the parties are well aware of each other's position.

In enacting section 1250.410, the Legislature imposed a duty upon *both* parties to act reasonably in an effort to settle their dispute. (*County of San Diego* v. *Woodward* (1986) 186 Cal.App.3d 82, 91 [230 Cal.Rptr. 406].) Since both parties are equally subject to the filing requirements, two corollary propositions hold true. First, the agency's noncompliance is no excuse for the property owner's failure to file. Second, the property owner's rights

cannot be defeated by an agency's refusal to file. Gross has argued that filing a demand where the agency has made clear its intention not to file an offer would be a futile act. On the contrary, if the owner's demand were the only filing made, and the court found it to be a reasonable demand, the owner would virtually be assured of an entitlement to attorney's fees under the statute.

Finally, Gross argues that section 1250.410, as a remedial statute, must be broadly construed to effect the legislative purpose and avoid harsh or absurd results. (*People* ex rel. *Dept. of Transportation* v. *Sunshine Canyon, Inc.* (1979) 94 Cal.App.3d 599, 602 [156 Cal.Rptr. 552].) The thrust of the statute, as he sees it, is to "make whole" a property owner who has been required to litigate because of the condemning agency's refusal to negotiate a reasonable settlement. He reasons therefore that "the right to recover litigation costs should hinge . . . on whether the property owner has been unreasonably required to litigate." (*Coachella Valley County Water Dist.* v. *Dreyfuss* (1979) 91 Cal.App.3d 949, 957 [154 Cal.Rptr. 467].) He claims litigation was forced upon him here because of the parties' relationship to each other and the Water District's consequent refusal to engage in settlement negotiations. As we have discussed above, however, Government Code section 1090 does not take precedence over Code of Civil Procedure section 1250.410. And the representations Gross attributes to opposing counsel concerning the Water District's refusal to settle were not borne out by the evidence.

Moreover, the statute was intended to reward the property owner only where he has demonstrated his own reasonableness. The court must find both that the plaintiff was unyielding, and that the property owner tendered a reasonable demand. (*Community Redevelopment Agency* v. *Krause, supra,* 162 Cal.App.3d 860, 864.) Gross wishes to reap the benefits of the statute without having made any showing that he comes within its ambit. There is no basis upon which the court could determine Gross's reasonableness under section 1250.410, since he did not file a final demand. Even had the court turned to the demands made at the settlement conferences for this purpose, which it is not entitled to do, it is doubtful whether Gross would have met the standard of reasonableness as discussed in the cases.[4] Quite apart from the fact that the ultimate judgment was much closer to the Water District's position than to his, the record shows that his demands for compensation escalated as the trial date approached, rather than the

---

[4] See, e.g., *City of San Leandro* v. *Highsmith, supra,* 123 Cal.App.3d 146, 155-159; *Coachella Valley County Water Dist.* v. *Dreyfuss, supra,* 91 Cal.App.3d 949, 958; *State of California* ex rel. *State Pub. Works Bd.* v. *Turner* (1979) 90 Cal.App.3d 33, 37 [153 Cal.Rptr. 156]; *Community Redevelopment Agency* v. *Krause* (1984) 162 Cal.App.3d 860, 866 [209 Cal.Rptr. 1].

reverse. Neither demand was supported by appraisal data and both exceeded his own expert's opinions of value.

#### CONCLUSION

██ Since there is no constitutional compulsion to award litigation costs to a landowner in a condemnation proceeding, entitlement is a matter of legislative determination. (*County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141, 148-149 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538].) ██ Here the legislature has seen fit to allow recovery of such costs only where the property owner has indicated his willingness to settle prior to trial by timely filing a reasonable demand. This requirement in no way violates the public policy prohibiting conflicts of interest between a board member and his agency as expressed in Government Code section 1090. Notwithstanding his status as a board member of the agency condemning his property, Gross was subject to the mandatory requirements of section 1250.410. His noncompliance bars his recovery of litigation expenses.

The order is affirmed.

Agliano, P. J., and Zecher, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.