TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-1001 |
| of | : | |
| | : | November 25, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE STEVEN R. SANDERS, COUNTY COUNSEL, COUNTY OF SAN BENITO, has requested an opinion on the following question:

May a county board of supervisors enter into an agreement with the subdividers of a parcel of property that would require the installation of a larger storm drain system than necessary for the particular subdivision, with the county reimbursing the subdividers for the additional cost, if a member of the board of supervisors has an ownership interest in the parcel?

CONCLUSION

A county board of supervisors may enter into an agreement with the subdividers of a parcel of property that would require the installation of a larger storm drain system than necessary for the particular subdivision, with the county reimbursing the subdividers for the additional cost, even though a member of the board of supervisors has an ownership interest in the parcel.

ANALYSIS

Government code section 1090 **Footnote No. 1** prohibits public officers and employees from being financially interested in contracts made by them in their official capacities, or by boards or bodies of which they are members. Section 1090 states in part:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

If a conflict of interest exists under section 1090, not only is the official prohibited from contracting, but the

board or body on which he serves may not enter into the contract either. (67 Ops.Cal.Atty.Gen. 369, 375 (1984).) Abstention by the affected official does not avoid the proscription of section 1090. (See, e.g., *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 195; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 211-212.)

The question presented for resolution concerns whether a county board of supervisors may enter into a contract with one of its members notwithstanding the fact that the member has a financial interest in the contract. The agreement, executed under the terms of section 66485 and an implementing county ordinance, would require the subdividers of a parcel of property, including the supervisor as one of the owners, to construct larger drainage capacity improvements than would be necessary for the particular subdivision, with the county reimbursing the subdividers for the additional cost. These improvements would benefit the subsequent development of property adjacent to the subdivision. Would the agreement be prohibited under section 1090 due to the "self dealing" aspect of the transaction? We conclude that the agreement would not be prohibited because of the "subdividing lands" exemption from the prohibition contained in section 1091.1.

The Subdivision Map Act (§§ 66410-66499.37; "Act") allows a city or county, as a condition of granting subdivision map approval, to require a subdivider to construct public improvements, such as streets and sewers, or donate land or money for public facilities that will be needed due to the subdivision and future use of the property. Not only may a subdivider be required to construct improvements benefitting the proposed subdivision, he may also be required to install improvements benefitting property not within the proposed subdivision. (71 Ops.Cal.Atty.Gen. 163, 163-164 (1988).) Section 66485 states:

"There may be imposed by local ordinance a requirement that improvements installed by the subdivider for the benefit of the subdivision shall contain supplemental size, capacity, number, or length for the benefit of property not within the subdivision, and that those improvements be dedicated to the public. Supplemental length may include minimum sized offsite sewer lines necessary to reach a sewer outlet in existence at that time."

Section 66486 further provides:

"In the event of the installation of improvements required by an ordinance adopted pursuant to Section 66485, the local agency shall enter into an agreement with the subdivider to reimburse the subdivider for that portion of the cost of those improvements, including an amount attributable to interest, in excess of the construction required for the subdivision."

Thus, if a city or county requires the supplemental capacity improvements referred to in section 66485, it must enter into an agreement to reimburse the subdivider for the costs attributable to that portion of the improvements needed for property outside the subdivision. As regards the source of the funds for the reimbursement of the subdivider, section 66487 states:

"In order to pay the costs as required by the reimbursement agreement, the local agency may:

"(a) Collect from other persons, including public agencies, using such improvements for the benefit of real property not within the subdivision, a reasonable charge for such use.

"(b) Contribute to the subdivider that part of the cost of the improvements that is attributable to the benefit of real property outside the subdivision and levy a charge upon the real property benefitted to reimburse itself for such cost, together with interest thereon, if any, paid to the subdivider.

"(c) Establish and maintain local benefit districts for the levy and collection of such

(c) Establish and maintain local benefit districts for the levy and collection of such charges or costs from the property benefitted."

In examining whether section 1090 would be applicable to the contract in question, we first note that exceptions to the prohibition have been made for certain "remote interests" (§ 1091) and "non-interests" (§ 1091.5). (See *Citizen Advocates, Inc.* v. *Board of Supervisors* (1983) 146 Cal.App.3d 171, 178-179; *Fraser-Yamor Agency, Inc.* v. *Del Norte County, supra,* 68 Cal.App.3d at 217-218; 80 Ops.Cal.Atty.Gen. 335, 337 (1997).) In addition, a "rule of necessity" has been applied in particular circumstances to permit the making of a contract that would otherwise be proscribed. (See 80 Ops.Cal.Atty.Gen., *supra*, at 337*;* 73 Ops.Cal.Atty.Gen. 191, 195 (1990); 69 Ops.Cal.Atty.Gen. 102, 107-112 (1986); 65 Ops.Cal.Atty.Gen. 305, 308-311 (1982).) Lastly, there are two specialized exemptions (§§ 1091.1, 1091.2) not covered by sections 1091 or 1091.5.

Here, the statute governing our analysis is section 1091.1, which provides as follows:

"The prohibition against an interest in contracts provided by this article or any other provision of law shall not be deemed to prohibit any public officer or member of any public board or commission from subdividing lands owned by him or in which he has an interest and which subdivision of lands is effected under the provisions of Division 2 (commencing with Section 66410) of Title 7 of the Government Code or any local ordinance concerning subdivisions; provided, that (a) said officer or member of such board or commission shall first fully disclose the nature of his interest in any such lands to the legislative body having jurisdiction over the subdivision thereof, and (b) said officer or member of such board or commission shall not cast his vote upon any matter or contract concerning said subdivision in any manner whatever."

Applying this statutory language, we find that the agreement in question arises directly from the subdivision approval process itself. If a local ordinance imposes the requirement authorized by section 66485 and the local agency determines that the supplemental capacity is needed to benefit property not within the subdivision, the subdivider *must* provide the supplemental capacity as a condition for obtaining approval of the subdivision map. Under the agreement, the subdivider must be reimbursed for the expense of constructing the supplemental capacity for the benefit of later subdivisions and uses of adjacent property. **Footnote No. 2**

While subdivision approval may be said to be a "benefit" received by the subdivider, the Legislature has determined that such benefit should not bar a public official "from subdividing lands owned by him" (§ 1091.1) pursuant to the Act's requirements and local ordinances adopted thereunder. Even if the reimbursement could be viewed as a benefit, neither the subdivider nor the local agency has any choice in the matter; once the local agency orders the supplemental capacity, it is required by law to provide for reimbursement through an agreement.

In this regard, we find that the mandated reimbursement procedure here may be compared to the eminent domain procedure outlined in *Santa Clara Valley Water Dist.* v. *Gross* (1988) 200 Cal.App.3d 1363. In *Gross*, the court concluded that participation in a statutorily mandated process in connection with the sale of property through eminent domain did not constitute the making of a contract for purposes of section 1090. The court stated:

". . . . Section 1090 is a broadly drafted conflict-of-interest statute. It expresses a general policy that public officers and employees are to refrain from entering into transactions which will conflict with the performance of their official duties. (*City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259, 270.) . . . . Government Code section 1090 is directed at dishonest conduct and at ' " 'conduct that tempts dishonor' " ' (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 648); it has no force in the context of a condemnation action where the sale of property is accomplished by operation of law and each side is ordinarily represented by counsel.

"................................................

". . . . In our view compliance with section 1250.410 is no more likely to create an appearance of impropriety than participation in mandatory settlement conferences. 'The Legislature [in section 1250.410] did not direct the parties to "apprise" each other or "communicate" with each other about an offer or demand.' (*City of San Leandro* v. *Highsmith, supra*, 123 Cal.App.3d 146, 155.) Rather it is directed that each file with the court, and serve upon the other, a formal offer and demand, as an absolute prerequisite to an award of attorney's fees. This procedure is not the equivalent of negotiations between the parties and consequently does not run afoul of section 1090." (*Id.*, at pp. 1369-1370.)

Similarly, here, the supplemental capacity reimbursement procedure for subdivisions is mandated by statute. The reimbursement amount is dictated by the costs of construction; it is not subject to negotiation so as to cause an appearance of impropriety. The supervisor in question may only recover his actual costs--no more, no less--in being required to benefit property located outside the subdivision.

As the reimbursement procedure set forth in sections 66485-66489 arises directly from the subdivision process specified in section 1091.1, is mandated by statute, and does not involve negotiations that would cause an appearance of impropriety, we conclude that a county board of supervisors may enter into an agreement with the subdividers of a parcel of property that would require the installation of a larger storm drain system than necessary for the particular subdivision, with the county reimbursing the subdividers for the additional cost, even though a member of the board of supervisors has an ownership interest in the parcel. **Footnote No. 3** Of course, pursuant to the proviso contained in section 1091.1, the supervisor would be required to fully disclose the nature of his interest in the land to be subdivided and may not cast his vote on any matter pertaining to the subdivision, including the reimbursement agreement.

\* \* \* \* \*

**Footnote No. 1**
All undesignated section references hereafter are to the Government Code.
**Footnote No. 2**
Section 1091.1 contemplates that the subdivision process may involve an actual contract between the public body and one of its members since it states that the "member of such board or commission shall not cast his vote upon any matter or *contract* concerning said subdivision . . . ." (Italics added.)
**Footnote No. 3**
In light of the conclusion reached, it is unnecessary to determine whether the agreement would also avoid the proscription of section 1090 under the "rule of necessity" due to the county's need for the supplemental drainage capacity.